IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | Chapter 11 |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 19-19-11791 (BLS) |
| LOOT CRATE, INC., *et al.*,[1] | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Related Docket No(s). 27, 84** |
| | ) | |
| | ) | |

**ORDER (A) APPROVING BID PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) APPROVING RELATED CONTRACT ASSUMPTION AND ASSIGNMENT PROCEDURES, (C) AUTHORIZING THE DEBTORS TO ENTER INTO STALKING HORSE AGREEMENT AND APPROVING CERTAIN BID PROTECTIONS, (D) SCHEDULING A SALE HEARING, AND (E) GRANTING CERTAIN RELATED RELIEF**

Upon the motion (the "***Motion***")[2] of the above-debtors and debtors in possession (collectively, the "***Debtors***") for entry of this Order, pursuant to Sections 105(a), 363, 365, and 503 of the Bankruptcy Code, Rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014 of the Bankruptcy Rules, and Rule 2002-1, 6004-1 and 9006-1 of the Local Rules, authorizing various types of relief in conjunction with the proposed sale of substantially all of their Assets, as further described in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding

---

[1] The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Loot Crate, Inc. (7119); Loot Crate Holdings, Inc.; LC Funding, Inc.; and Loot Crate Parent, Inc. The Debtors' noticing address in these Chapter 11 cases is 3401 Pasadena Avenue, Los Angeles, CA 90031.

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

in accordance with 28 U.S.C. § 157(b)(2)(A) and (M); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being adequate and appropriate under the particular circumstances; and upon the record of any hearing held to consider the relief requested in the Motion; and upon the First Day Declaration and all proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and there being good cause to waive the 14-day stay imposed by Bankruptcy Rule 6004(h) and 6006(d) to the extent applicable; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation, and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED as set forth herein.

2. All objections to the relief provided herein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3. The Bid Procedures attached hereto as <u>Exhibit 1</u> are fair, reasonable, and appropriate under the circumstances and designed to maximize recovery on, and realize value of, the Debtors' Assets and are therefore approved. The Bid Procedures shall govern the submission, receipt, and analysis of all bids relating to the Sale and any party desiring to submit a bid shall do so strictly in accordance with the terms of the Bid Procedures and this Order.

4. The form of notice of the Auction and the Sale attached to the Motion as <u>Exhibit B</u> and as modified for any immaterial changes or to be consistent with this Order (the "***Sale Notice***") is reasonably calculated to provide all interested parties with timely and proper notice of the

proposed Sale and is therefore approved. Within one day after the entry of this Order, or as soon thereafter as practicable (the "***Mailing Date***"), the Debtors (or their agents) shall serve the Sale Notice by e-mail (if known) and first-class mail, postage prepaid, upon: (a) the U.S. Trustee; (b) the Securities & Exchange Commission; (c) the Internal Revenue Service; (d) the Delaware State Treasury; (e) the Delaware Secretary of State; (f) counsel to the Unsecured Creditors' Committee; (g) counsel to the DIP Lender; (h) Wells Fargo Bank, National Association; (i) U.S. Attorney's Office for the District of Delaware; (j) any party known or reasonably believed to have asserted any lien, claim, or encumbrance or other interest in the Debtors' Assets; (k) any party known or reasonably believed to have expressed an interest in acquiring some or substantially all of the Debtors' Assets; (l) any parties that have requested notice in these Cases pursuant to Bankruptcy Rule 2002; and (m) all Taxing Authorities. Such notice shall be sufficient and proper notice of the Sale with respect to known interested parties and no other or further notice of the Auction or the Sale Hearing (as defined below) to such parties shall be required.

5. <u>Publication Notice</u>. Pursuant to Fed. R. Bankr. P. 2002 and 6004, publication of the Sale Notice (as may be modified for publication purposes) as the Debtors deem appropriate on the Mailing Date or as soon as practicable thereafter constitutes sufficient notice to any other interested parties whose identities are unknown to the Debtors and no other or further notice of the Auction or the Sale Hearing to such parties shall be required.

6. The hearing to approve the Sale of the Debtors' Assets (the "***Sale Hearing***") will be held on **September 26, 2019 at 12:00 p.m. (ET)** which may be adjourned for any reason. Any such adjournment shall be effective upon the filing of a notice of adjournment or the making of an announcement at the Sale Hearing. No further notice of any such adjournment or continuance will be required to be provided to any party.

7. The deadline for filing an objection to the Sale, except for objections as to the conduct of the Auction, shall be **September 20, 2019 at 4:00 p.m. (ET)** (the "*Sale Objection Deadline*"). Objections, if any, shall be in writing, filed with the Court and served by the Sale Objection Deadline upon: (i) co-counsel to the Debtors: (a) Bryan Cave Leighton Paisner LLP, 1201 W. Peachtree Street, NW, 14th Floor, Atlanta, Georgia 30309-3471 (Attn: Mark I. Duedall), mark.duedall@bclplaw.com; and (b) Robinson & Cole LLP, 1000 N. West Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Jamie L. Edmonson), jedmonson@rc.com; (ii) counsel to the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Benjamin Hackman), benjamin.a.hackman@usdoj.gov; (iii) counsel to the DIP Lender, Cooley LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Cathy Hershcopf and Robert Winning), chershcopf@cooley.com and rwinning@cooley.com, and Bayard, P.A., 600 N. King Street, Wilmington, Delaware 19806 (Attn: Erin R. Fay), efay@bayardlaw.com; and (iv) counsel to the Creditors' Committee, Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801 (Attn: Jeffrey R. Waxman, Eric J. Monzo, and Brya M. Keilson) jwaxman@morrisjames.com, emonzo@morrisjames.com, and bkeilson@morrisjames.com (collectively, the "*Objection Notice Parties*").

8. The deadline for filing any objection to the conduct of the Auction shall be **September 25, 2019 at 4:00 p.m. (ET),** and any such objection shall be served upon the Objection Notice Parties by that date and time.

9. The deadline for submitting a Qualified Bid shall be **September 23, 2019 at 5:00 p.m. (ET)** (the "*Bid Deadline*").

10. As soon as practicable after the Bid Deadline, but no later than **9:00 a.m. (ET) on September 24, 2019**, the Debtors shall alert parties submitting bids as to whether more than one Qualified Bid has been received and whether the Debtors will proceed with the Auction.

11. If only one Qualified Bid or no Qualified Bid is received by the Bid Deadline, then the Debtors may decide to not hold the Auction. If more than one Qualified Bid is received by the Bid Deadline, then the Debtors shall conduct the Auction. The Auction shall commence on **September 24, 2019 at 12:00 p.m. (ET)** at the offices of Bryan Cave Leighton Paisner, LLP, 1290 Avenue of the Americas, New York, NY 10104-3300, or such later time (after consultation with the Consultation Parties) or other place as the Debtors shall timely notify the Qualified Bidders. The Debtors, in consultation with the Consultation Parties, may conduct the auction telephonically.

12. As soon as practicable after the Auction, but no later than one day after conclusion of the Auction, the Debtors shall provide electronic notice of the results thereof on the docket of these Cases. Such notice will indicate the identity of the Successful Bidder(s) and any Back-up Bidder(s) and may be supplemented by a later notice attaching the proposed form of asset purchase agreement(s) and auction transcript.

13. With respect to the Executory Contracts, no later than one business day after entry of this Order, the Debtors will file with the Court and serve by first class mail on each counterparty to an Executory Contract which the Debtors may assign (the "*Counterparty*") a notice setting forth the amount of cure owed thereunder according to the Debtors books and records (the "*Cure Notice*"). The Cure Notice shall state: (i) the cure amount that the Debtors believe is necessary to assume such contract or lease pursuant to Section 365 of the Bankruptcy Code (the "*Cure Amount*"); (ii) notify each Counterparty that such Counterparty's lease or contract may be assumed and assigned to the Successful Bidder to be identified at the conclusion of the Auction;

(iii) state the date of the Sale Hearing; and (iv) state the deadline by which the Counterparty shall file an objection to the Cure Amount.

14. The form of the Cure Notice attached to the Motion as Exhibit C is reasonably calculated to provide Counterparty with proper notice of the intended assumption and assignment of the Executory Contracts, any Cure Amounts relating thereto, and procedures for objecting to assumption or assignment of the Executory Contracts.

15. The deadline for filing an objection (a "*Cure Objection*") to the Cure Amounts shall be **September 20, 2019 at 4:00 p.m. (ET)** (the "*Cure Objection Deadline*"). Objections, if any, shall be in writing, filed with the Court and served upon the Objection Notice Parties, so that they are actually received on or before the Cure Objection Deadline. Any objection to a Cure Amount must state with specificity what cure the Counterparty believes is required with appropriate documentation in support thereof. If no objection is timely received, the Cure Amount set forth on the Cure Notice shall be controlling notwithstanding anything to the contrary in any Executory Contract or other document as of the date of the Cure Notice. Any objections not resolved by the Sale Hearing may be adjourned to a later hearing date as fixed by the Court.

16. A Counterparty may seek additional adequate assurance information by emailing its request (and explicitly agreeing in writing that it will keep any information it receives confidential) to counsel for the Debtors, Mark I. Duedall (mark.duedall@bclplaw.com) and Jamie L. Edmonson (jedmonson@rc.com) at least one day prior to the Auction. Counsel for the Debtors will email adequate assurance packages to those parties as soon as practicable but no later than one day after the Auction.

17. The deadline for filing an objection (an "*Adequate Assurance Objection*") to the assumption and assignment of an Executory Contract by the Stalking Horse Bidder (as defined

below) on the basis of a lack of adequate assurance of future performance shall be **September 20, 2019 at 4:00 p.m. (ET)** (the "*Adequate Assurance Objection Deadline*").  Objections, if any, shall be in writing, filed with the Court and served upon the Objection Notice Parties, so that they are actually received on or before the Adequate Assurance Objection Deadline.  Any objections not resolved by the Sale Hearing may be adjourned to a later hearing date as fixed by the Court. To the extent a party other than the Stalking Horse Bidder is the Successful Bidder and the Debtors receive approval to sell their Assets to such party by a separate order of this Court, then a subsequent notice shall be sent with a new Adequate Assurance Objection Deadline.

18.  Any Counterparty who does not file a timely Cure Objection or Adequate Assurance Objection shall be deemed to have consented to the cure amount stated in the Cure Notice and the assumption and assignment of its Executory Contract to the Successful Bidder and will be forever barred from objecting to such assumption and assignment on account of the Cure Amount, lack of adequate assurance or any other grounds.

19.  The hearing with respect to any Cure Objections and/or Adequate Assurance Objections may be held: (i) at the Sale Hearing; or (ii) on such other date as the Bankruptcy Court may designate.  To the extent the Debtors and a Counterparty are able to consensually resolve a Cure Objection or Adequate Assurance Objection prior to the Sale Hearing, the Debtors shall promptly provide notice to the Committee, the U.S. Trustee and the Successful Bidder, as applicable, of such resolution.

20.  The Debtors have entered into the stalking horse purchase agreement (the "*Stalking Horse Agreement*") with Loot Crate Acquisition LLC ("*LCA*"), attached as Exhibit A to the *Notice of Filing of Executed Stalking Horse Agreement* [D.I. 131].  The Stalking Horse

Agreement shall be subject to higher or better offers at the Auction and shall establish a minimum bid at the Auction for the Assets included in the Stalking Horse Agreement.

21. LCA shall, if the Stalking Horse Agreement is terminated in a manner set forth therein, be entitled to reimbursement of its actual, documented, out-of-pocket expenses incurred in connection with its pursuit of the Sale (the "*Expense Reimbursement*"), provided that (a) no such expenses shall be paid if they were already paid to LCA or any affiliate of LCA in respect of the post-petition financing provided to the Debtors, and (b) notwithstanding anything to the contrary contained in the Stalking Horse Agreement with LCA, LCA shall not be entitled to any break-up fee or other bid protections, other than the Expense Reimbursement.

22. The Bid Procedures (including the Expense Reimbursement) are fair and reasonable, are reasonably calculated to produce the best and highest offers for the Assets and will confer actual benefits upon the Debtors' estates. The Bid Procedures (including the Expense Reimbursement) represent an exercise of the sound business judgment of the Debtors and will facilitate an orderly sale process.

23. LCA shall be considered a Qualified Bidder with respect to its rights to acquire all or any of the assets by credit bid under its Stalking Horse Agreement, and any such credit bid submitted by LCA shall be deemed a Qualified Bid.

24. The requirements of Local Rule 6004-1(b) with respect to the filing of the Stalking Horse Agreement, or a copy of any other proposed purchase agreement, are hereby waived. The Debtors shall file a form of Sale Order as soon as practicable prior to a Sale Hearing.

25. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

26. Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry and the requirements of Bankruptcy Rule 6004(h) are hereby waived.

27. This Court shall retain exclusive jurisdiction with respect to any and all matters, claims, rights, or disputes arising from or related to the implementation or interpretation of this Order.

**Dated: September 11th, 2019**
**Wilmington, Delaware**

**BRENDAN L. SHANNON UNITED STATES BANKRUPTCY JUDGE**

# **EXHIBIT 1**

Bid Procedures

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LOOT CRATE, INC., *et al.*,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 19-11791 (BLS)<br>)<br>) (Jointly Administered)<br>)<br>) **Related Docket No(s). 27**<br>) |

## BID PROCEDURES

These Bid Procedures (the "*Bid Procedures*") have been approved by an order of the United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Court*") entered on _____, 2019 (the "*Bid Procedures Order*") in the above-captioned jointly administered Chapter 11 cases of Loot Crate, Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (the "*Debtors*"). These Bid Procedures set forth the process by which the Debtors are authorized to conduct the auction (the "*Auction*") for the sale of a portion or substantially all of the Debtors' assets (the "*Assets*") pursuant to Section 363 of the Bankruptcy Code (the "*Sale*").

> **Copies of the Bid Procedures Order, and other documents related thereto are available free of charge on the website of the Debtors' noticing and claims agent at https://cases.stretto.com/lootcrate.**

**A.   Bidder Requirements.**

A party must submit the following documents in order to be a "*Qualified Bidder*"[2] and be allowed to participate in the bidding process and receive access to conduct due diligence:

   i.   an executed confidentiality agreement on terms reasonably acceptable to the Debtors (a "*Confidentiality Agreement*");

   ii.  proof by the bidder (the "*Proposed Bidder*") of its financial capacity to close a

---

[1]   The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Loot Crate, Inc. (7119); Loot Crate Holdings, Inc.; LC Funding, Inc.; and Loot Crate Parent, Inc. The Debtors' noticing address in these Chapter 11 cases is 3401 Pasadena Avenue, Los Angeles, CA 90031.

[2]   Loot Crate Acquisition LLC ("*LCA*") shall be considered a Qualified Bidder with respect to its rights to acquire all or any of the assets by credit bid, and any such credit bid submitted by LCA shall be deemed a Qualified Bid (as defined herein). Notwithstanding the foregoing, all of the parties' rights are reserved under Section 363(k) of the Bankruptcy Code, except as otherwise provided in the DIP Order.

proposed transaction, including payment of any cure amount with respect to any contract that may be assigned with respect to the Sale, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Proposed Bidder (or, if the Proposed Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which the Debtors and its advisors will determine in consultation with: (i) Money Chest, LLC (the "***DIP Lender***"), but only if Loot Crate Acquisition LLC ("***LCA***") (or any affiliate thereof) is **no longer** bidding for the Assets; and (ii) the official committee of unsecured creditors (the "***Committee***" and, together with the DIP Lender (but subject to the same limitation whereby the DIP Lender shall only have any such rights if LCA (or any affiliate thereof) is no longer bidding for the Assets), the "***Consultation Parties***").

**B.    Bid Requirements.**

In order to be eligible to participate in the Auction, a Qualified Bidder must, on or before the September 23, 2019 at 5:00 p.m. (ET) (the "***Bid Deadline***") deliver a written and executed copy of an asset purchase agreement and ancillary documents by which the potential bidder offers to purchase some or all of the Assets at a purchase price and upon the terms and conditions set forth therein and which provides, or otherwise complies with, the items noted below (any such offer, a "***Qualified Bid***" and the corresponding documents submitted therewith, the "***Bid Documents***"):

i.   Identifies the Assets (or the portion thereof) to be purchased, including any Executory Contracts that would be assumed and assigned in connection with the proposed transaction;

ii.  Identifies, if applicable, the proposed form of adequate assurance of future performance with respect to any Executory Contracts that would be assumed and assigned in connection with the proposed transaction;

iii. Proposes a purchase price that is a higher and / or better offer for the Assets (or the portion thereof) to be purchased; provided, however, than an offer shall not be considered a higher and / or better offer unless such offer proposes a purchase price that is equal to or greater than (a) the Purchase Price (as defined in the Stalking Horse Agreement) as set forth in the Stalking Horse Agreement, *plus* (b) an initial overbid equal to $1,000,000, *plus* (c) the Expense Reimbursement (as defined in the Stalking Horse Agreement), subject to the terms of the Stalking Horse Agreement and the Bid Procedures Order;

iv.  Constitutes a binding proposal regarding the assets sought to be acquired and the consideration to be paid;

v.   Remains irrevocable until 48 hours after the Sale Hearing (as defined below);

vi.  Other than as agreed by the Debtors in connection with seeking approval of protections for a Stalking Horse Bidder (as defined below), is not subject to any breakup fee, transaction fee, termination fee, expense reimbursement or any similar

       type of payment or reimbursement; and

  vii.    Is accompanied by a good faith deposit in the amount of 10% of the proposed purchase price (a "***Good Faith Deposit***").[3]

A Qualified Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome of due diligence review.

The Bid Documents shall be delivered to the following parties:

| | |
|---|---|
| **The Debtors' Chief Restructuring Officer:**<br>Portage Point Partners<br>Stuart Kaufman<br>300 North LaSalle<br>Suite 4925<br>Chicago, IL 60654<br>skaufman@pppllc.com<br><br>**The Debtors' Chief Transformation Officer:**<br>Mark Palmer<br>Chief Transformation Officer<br>Theseus Strategy Group LLC<br>Mark@TheseusStrategy.com<br><br>**The Debtors' Investment Banker:**<br>FocalPoint Securities, LLC<br>Michael Fixler<br>150 N. Riverside Plaza<br>Suite 2820<br>Chicago, IL 60606<br>mfixler@focalpointllc.com | **Counsel to the DIP Lender:**<br>Cooley LLP<br>Cathy Hershcopf<br>Robert Winning<br>55 Hudson Yards<br>New York, NY 10001<br>chershcopf@cooley.com<br>rwinning@cooley.com<br><br>**Co-Counsel to the DIP Lender:**<br>Bayard, P.A.<br>Erin R. Fay<br>600 N. King Street<br>Wilmington, DE 19806<br>efay@bayardlaw.com<br><br>**Counsel to the Creditors' Committee:**<br>Morris James LLP<br>Jeffrey R. Waxman<br>Eric J. Monzo<br>Brya M. Keilson<br>500 Delaware Avenue<br>Suite 1500<br>Wilmington, DE 19801<br>jwaxman@morrisjames.com,<br>emonzo@morrisjames.com, and<br>bkeilson@morrisjames.com |
| **The Debtors' Co-Counsel:**<br>Bryan Cave Leighton Paisner LLP<br>Andrew J. Schoulder<br>Mark I. Duedall<br>1201 W. Peachtree Street, NW, 14th Floor<br>Atlanta, GA 30309-3471 | **The Debtors' Co-Counsel:**<br>Robinson & Cole LLP<br>Jamie L. Edmonson<br>1000 N. West Street, Suite 1200<br>Wilmington, Delaware 19801<br>jedmonson@rc.com |

---

[3]    No deposit is required for the credit bid represented by the LCA Stalking Horse Agreement.

| andrew.schoulder@bclplaw.com<br>mark.duedall@bclplaw.com | |
|---|---|

The Debtors shall provide copies of all Qualified Bids to the Consultation Parties as soon as reasonably practicable after such bids have been received by the Debtors. The Debtors will be authorized to approve joint bids in the Debtors' exercise of their reasonable good faith business judgment.

Prior to the Auction, the Debtors shall determine, in consultation with their advisors and the Consultation Parties and notify each Proposed Bidder whether such Proposed Bidder is deemed a "Qualified Bidder" and has submitted acceptable Bid Documents such that their bid is deemed a "Qualified Bid."

**C.   Credit Bidding.**

LCA shall be deemed a Qualified Bidder and shall not be required to provide a Good Faith Deposit.  LCA may participate in the Auction and to the extent as may be provided in the Final DIP Order, may credit bid at any time up to the conclusion of the Auction, in its sole and absolute discretion, any portion and up to the entire amount of its pre-petition or post-petition claims and Expense Reimbursement (a "*Credit Bid*").  LCA shall only be required to be a Back-Up Bidder (as defined below) through October 1, 2019.

**D.   Access to Due Diligence.**

Only Qualified Bidders shall be eligible to receive due diligence and access to additional non-public information. The Debtors along with their advisors shall coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders; *provided, however,* the Debtors may decline to provide such information to Qualified Bidders who, in the Debtors' reasonable business judgment and following consultation with the Consultation Parties, have not established that such Qualified Bidders intend in good faith to, or have the capacity to, consummate a Qualified Bid.

Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Debtors' assets and liabilities that are the subject of the Auction prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the Debtors' assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bid Procedures. Neither the Debtors nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors or professionals are responsible for, or shall bear any liability with respect to, any information obtained by Proposed Bidders in connection with the Sale.

**E.     Auction.**

If only one Qualified Bid or no Qualified Bid is received by the Bid Deadline, then the Debtors may decide to not hold the Auction. If more than one Qualified Bid is received by the Bid Deadline, then the Debtors shall conduct the Auction. The Auction shall commence on September 24, 2019 at 12:00 p.m. (ET) at the offices of Bryan Cave Leighton Paisner, LLP, 1290 Avenue of the Americas New York, NY 10104-3300 or such later time (after consultation with the Consultation Parties) or other place as the Debtors shall timely notify the Qualified Bidders. The Debtors, in consultation with the Consultation Parties, may conduct the auction telephonically. Parties other than Qualified Bidders and the Consultation Parties that wish to attend the Auction must provide the Debtors' counsel with notice of such intent by September 20, 2019 at 12:00 p.m. (ET).

The Auction will be conducted in accordance with the following procedures (the "***Auction Procedures***"):

i. only the Qualified Bidders shall be entitled to bid at the Auction;

ii. after consulting with the Consultation Parties, the Debtors will announce the starting bid (the "***Starting Auction Bid***") at the commencement of the Auction;

iii. any bid made by a Qualified Bidder at the Auction subsequent to the Debtors' announcement of the Starting Auction Bid (an "***Overbid***") shall be made in increments valued at not less than $100,000 over the Starting Auction Bid or then highest or otherwise best Overbid, as applicable, which may be modified as necessary to the extent the Debtors deem appropriate, after consultation with the Consultation Parties;

iv. each Qualified Bidder will be informed of the terms of the previous bids;

v. the bidding may be transcribed or videotaped to ensure an accurate recording of the bidding at the Auction;

vi. each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale; and

vii. absent irregularities in the conduct of the Auction, the Bankruptcy Court will not consider bids made after the Auction is closed; and the Auction shall be governed by such other Auction Procedures as may be announced by the Debtors after consultation with its advisors and the Consultation Parties from time to time on the record at the Auction.

**F.     Selection of the Successful Bid.**

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, and in consultation with the Consultation Parties, shall identify the highest or otherwise best Qualified Bid(s) that in the exercise of their fiduciary duties the Debtors in good faith believe is in the best interests of the

Debtors' estates and stakeholders, which will be determined by considering, among other things:

  i.  the total expected consideration to be received by the Debtors;

  ii. the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; and

  iii. the expected net benefit to the estate.

The Qualified Bidder(s) having submitted a Successful Bid(s) will be deemed the "***Successful Bidder(s)***." The Debtors, in consultation with the Consultation Parties may also designate the Back-Up Bid (as defined below). The Successful Bidders and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms upon which such Successful Bids were made.

As soon as reasonably practicable following the Auction, but no later than one day after conclusion of the Auction, the Debtors will file a notice of Successful Bidder(s) with the Bankruptcy Court. The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing, at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that: (a) the Auction was conducted, and the Successful Bidder(s) was selected, in accordance with these Bid Procedures; (b) the Auction was fair in substance and procedure; (c) the Successful Bid was a Qualified Bid as defined in these Bid Procedures; and (d) consummation of the Successful Bid will provide the highest or otherwise best value for the Debtors' assets and is in the best interests of the Debtors' estates.

### G.  Sale Hearing.

A hearing to consider approval of the Successful Bid(s) (the "***Sale Hearing***") is presently scheduled to take place on September 26, 2019 at 12:00 p.m. (ET), or as soon thereafter as counsel may be heard. The Sale Hearing may be adjourned to a later date by the Debtors for any reason. Any such adjournment shall be effective upon the filing of a notice of adjournment or the making of an announcement at the Sale Hearing. No further notice of any such adjournment or continuance will be required to be provided to any party.

### H.  Designation of Back-Up Bidder.

If for any reason the Successful Bidder fails to consummate the Successful Bid within the time permitted after the entry of the Sale Order approving the Sale to the Successful Bidder, then the Qualified Bidder with the second highest or otherwise best Bid (the "***Back-Up Bidder***"), as determined by the Debtors after consultation with their advisors, and in consultation with the Consultation Parties, at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best bid (the "***Back-Up Bid***"), provided, however, that as set forth above, under no circumstances (absent its express, written consent) shall LCA be a Back-Up Bidder beyond October 1, 2019.

The Debtors will be authorized, but not required, to consummate the transaction pursuant

to the Back-Up Bid as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least twenty-four hours advance notice, which notice will be filed with the Bankruptcy Court. Upon designation of the Back-Up Bidder at the Auction, the Back-Up Bid shall remain open until the closing of the Successful Bid.

**I.     Return of Good Faith Deposit.**

The Good Faith Deposit of the Successful Bidder shall, upon consummation of the Successful Bid, be credited to the purchase price paid for Debtors' Assets. If the Successful Bidder fails to consummate the Successful Bid, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, the Debtors.

The Good Faith Deposit of any unsuccessful Qualified Bidders will be returned within ten days after consummation of the Sale.

**J.     Stalking Horse Agreements and Bid Protections.**

The Debtors have entered into a stalking horse purchase agreement (the "***Stalking Horse Agreement***") with LCA, attached as Exhibit A to the *Notice of Filing of Executed Stalking Horse Agreement* [D.I. 131]. Pursuant to the Stalking Horse Agreement between the Debtors and LCA, LCA shall be entitled to an Expense Reimbursement (as defined in the Stalking Horse Agreement) in the amount of up to $750,000, subject to the terms of the Stalking Horse Agreement and the Bid Procedures Order. The Stalking Horse Agreement shall be subject to higher or better offers at the Auction and shall establish a minimum bid at the Auction for the Assets included in the Stalking Horse Agreement.

**K.     Consent to Jurisdiction.**

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of the Bid Procedures and/or the Qualified Bid, as applicable.

**L.     Reservation of Rights.**

The Debtors reserve their rights to modify these Bid Procedures, in consultation with the Consulting Parties, in any manner that will best promote the goals of the bidding process or impose, at or prior to the Auction, additional customary terms and conditions on the Sale.

Notwithstanding anything herein or in the Bid Procedures Order to the contrary, nothing will in any way impair or enhance, alter or otherwise affect any and all rights that any secured lender may have to "credit bid" pursuant to Section 363(k) of the Bankruptcy Code or other applicable law. For the avoidance of doubt, every dollar of a credit bid shall be treated the same as a dollar from a cash bid and a cash bid shall not be deemed higher or otherwise better solely for the reason it is a cash bid and not a credit bid.