**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OLD LC, INC., *et al.*,[1] | ) | Case No. 19-11791 (BLS) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Objection Deadline: November 26, 2019 at 4:00 p.m. (ET)** |
| | ) | **Hearing Date: at December 3, 2019 @ 1:00 p.m. (ET)** |
| | ) | |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER
APPROVING SETTLEMENT AGREEMENT BY AND BETWEEN THE
DEBTORS AND CLEAR FINANCE TECHNOLOGY CORPORATION
D/B/A CLEARBANC PURSUANT TO BANKRUPTCY RULE 9019**

Old LC, Inc. ("*Loot Crate*"), Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc. (collectively with OLD LC, the "*Debtors*") file this Motion (the "*Motion*") for an order, substantially in the form attached hereto as Exhibit A (the "*Proposed Order*"), approving the settlement agreement (the "*Settlement Agreement*") by and between the Debtors and Clear Finance Technology Corporation d/b/a Clearbanc ("*Clear Finance*") and Clearfund I. L.P. ("*Clearfund*" and, together with Clear Finance, "*Clearbanc*"), a copy of which is attached hereto as Exhibit B to the Proposed Order. In support of this Motion, the Debtors respectfully represent as follows:

**Background**

1.  On August 11, 2019 for Old LC, Inc., Old LC Holdings, Inc., and Old LCF, Inc., and on August 12, 2019 for Old LC Parent, Inc. (for each Debtor, the "*Petition Date*"), the Debtors filed voluntary petitions with this Court under Chapter 11 of Title 11 of the United

---

[1] The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Old LC, Inc. (7119), Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc. The Debtors' noticing address in these Chapter 11 cases is 3401 Pasadena Avenue, Los Angeles, CA 90031.

States Code (the "**Bankruptcy Code**").  The Debtors' Chapter 11 cases (collectively, the "**Cases**") are consolidated for procedural purposes only and administered jointly.  The Debtors are authorized to continue to operate and manage their businesses and assets as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. As of the Petition Date, the Debtors operated a subscription box service catering to fandom and enthusiasts through "crates" curated with "geek and gamer products" each month. On October 1, 2019, the Debtors closed on a sale of substantially all of their assets to Loot Crate Acquisition LLC ("**LCA**") pursuant to the Court's order approving the sale.

3. Further information about the Debtors and these Cases and pertinent facts in support of this Motion can be found in the *Declaration of Stuart Kaufman in Support of First Day Motions and Related Relief* (the "**First Day Declaration**") [D.I. 4], which is incorporated by reference.

4. On August 22, 2019, an official committee of unsecured creditors was appointed in these Cases (the "**Creditors' Committee**").  No request has been made for the appointment of an examiner or trustee.

**Jurisdiction, Venue, and Statutory Predicate**

5. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(A)-(C).

6. Venue of these Cases is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

7.  The statutory predicates for the relief requested in this Motion are Section 105 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

### Relief Requested

8.  By this Motion, the Debtors seek entry of the Proposed Order, pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019, approving the Settlement Agreement between the Debtors and Clearbanc and granting related relief.

### Facts Relevant to This Motion

**A.    Brief Summary of the Dispute.**

9.  Loot Crate and Clearbanc are parties to certain pre-petition agreements titled "Revenue Share Agreement" dated May 8, 2019, May 29, 2019, June 24, 2019, and August 6, 2019 (collectively, the "***Share Agreements***").  The Share Agreements each involved the payment of money by Clearbanc to Loot Crate, in return for which Clearbanc would have an interest in Loot Crate's future revenues and collections thereon.  Upon the filing of these Cases, the issue immediately arose as to the respective rights and obligations of the parties under the Share Agreements.

10.  Loot Crate had originally thought the Share Agreements would require litigation to resolve.  *See* First Day Declaration at ¶¶ 22-25.  Instead, Clearbanc and Loot Crate began a constructive dialogue, and in light of the facts of these Cases, the prospects for recovery, the challenges to both parties in litigation issues over a variety of matters, they determined that for purposes of these Cases, Clearbanc's rights under the Share Agreements would be treated as a claim.

**B.      Summary of Salient Terms of the Settlement Agreement.**

11.     The Settlement Agreement provides, among other things, that:

a.      Clearbanc shall have an allowed general unsecured claim against the Loot Crate bankruptcy estate in the amount of the outstanding balance under the Share Agreements as of the Petition Date, which is $2,327,056.03 (the "***Clearbanc Allowed Claim***"), and no other claims, rights, or interests (ownership or otherwise) against any of the Debtors or their assets (including any assets sold to LCA free and clear pursuant to section 363(f) of the Bankruptcy Code);

b.      The Debtors and Clearbanc are including mutual releases in the Settlement Agreement, which extends to the affiliates, officers, directors, and the like of each of the parties, as set forth in the Settlement Agreement; and

c.      Any order of this Court approving the Settlement Agreement (i) shall not include any findings or determinations as to the characterization of the transactions evidenced by the Share Agreements and (ii) shall provide that Clearbanc has no further obligation to make funding or other financial accommodations available to the Debtors.

## Basis for Relief

12.     Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Bankruptcy Rule 9019 provides, in pertinent part, that "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

13.     "The federal courts have a well-established policy of encouraging settlement to promote judicial economy and limit the waste of judicial resources." *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.,* 523 F. Supp. 2d 376, 384 (S.D.N.Y.

2007); *see also, e.g., U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 27–28 (1994) (discussing the general utility of settlement vis-à-vis judicial economy at various stages of proceedings). The force of this established federal policy is particularly acute in the bankruptcy context, where compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968). Indeed, in order to "minimize litigation and expedite the administration of a bankruptcy estate, 'compromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin),* 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 *Collier on Bankruptcy* P 9019.03[1] (15th ed. 1993)); *see also In re Penn Cent. Transp. Co.,* 596 F.2d 1102, 1113 (3d Cir. 1979); *In re World Health Alts., Inc.,* 344 B.R. 291, 296 (Bankr. D. Del. 2006).

14. The decision whether to approve a proposed settlement is committed to the discretion of the bankruptcy court, "which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.,* 211 B.R. 798, 801 (D. Del. 1997). In exercising that discretion, the United States Court of Appeals for the Third Circuit has stated that courts should consider "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin,* 91 F.3d at 393; *see also Will v. Nw. Univ. (In re Nutraquest, Inc.),* 434 F.3d 639, 644 (3d Cir. 2006). The proponent of a settlement is not required to demonstrate "that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is "'within the reasonable range of litigation possibilities.'" *In re World Health,* 344 B.R. at 296; *In re Coram Healthcare Corp.,* 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[T]he court does not have to be convinced that the settlement is the best possible compromise.").

15.     The Debtors have determined, in an exercise of the Debtors' sound business judgment, that the terms of the Settlement Agreement are fair and reasonable and that the best interests of the Debtors' estates and creditors will be served by the entry of the Proposed Order. The terms of the Settlement Agreement are the product of good faith, arm's-length negotiations between the Debtors and Clearbanc. *Id.* Further, the settlement falls well within the range of reasonable litigation outcomes in that the Settlement Agreement provides for a quick and relatively inexpensive resolution instead of the otherwise prolonged and expensive litigation that would have been necessary without such settlement.

16.     Turning to the *Martin* factors, a *bona fide* dispute exists between the Debtors and Clearbanc, over the characterization of the transactions evidenced by the Sharing Agreements and whether Clearbanc's purported interest in the Debtors' revenues was perfected and/or enforceable. Given the fact-intensive nature of this sort of dispute, the Debtors could ultimately be unsuccessful. Given this uncertainty and the positive resolution of the issues embodied by the terms of the Settlement Agreement, the first *Martin* factor—probability of success in the litigation—weighs in favor of approving the Settlement Agreement. The Settlement Agreement resolves the parties' disputes in an efficient and consensual manner, avoiding costly and time-consuming litigation that would detract from the value of the estates and the recovery of creditors. *Id.* Therefore, the third and fourth *Martin* factors—the complexity of the litigation and the expense, inconvenience, and delay necessarily attending it as well as the consideration of the paramount interests of creditors—further support approving the Settlement Agreement.

17.     Accordingly, the Debtors respectfully submit that the Settlement Agreement is fair, reasonable, and in the best interests of the estates and should therefore be approved under Bankruptcy Rule 9019 and Section 105(a) of the Bankruptcy Code.

**No Prior Request**

18. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

**Consent to Jurisdiction**

19. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

**Notice**

20. Notice of this Motion will be provided to: (a) the Office of the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) counsel to the DIP Lender; (d) Wells Fargo Bank, N.A.; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the Office of the United States Attorney for the District of Delaware; (h) the Debtors' thirty largest unsecured creditors on a consolidated basis (other than those which have expressly instructed the Debtors' claims and noticing agent that they do not wish to receive notice of all motions and filings in these Cases); (i) Delaware State Treasury; (j) the Secretary of State of Delaware; (k) counsel to Clearbanc; and (l) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto, granting the relief requested herein and granting the Debtors such other relief as the Court deems appropriate.

| | |
|---|---|
| Dated: November 18, 2019<br>Wilmington, Delaware | **ROBINSON & COLE LLP**<br><br>/s/ Jamie L. Edmonson<br>Natalie D. Ramsey (No. 5378)<br>Jamie L. Edmonson (No. 4247)<br>Mark A. Fink (No. 3946)<br>1201 N. Market Street, Suite 1406<br>Wilmington, Delaware 19801<br>Telephone: (302) 516-1700<br>Facsimile: (302) 516-1699<br>Email: nramsey@rc.com<br>         jedmonson@rc.com<br>         mfink@rc.com<br><br>*Co-Counsel to the Debtors and Debtors-in-Possession* |
| **BRYAN CAVE LEIGHTON PAISNER LLP**<br>Mark I. Duedall (No. 3346)<br>Leah Fiorenza McNeill *(Admitted pro hac vice)*<br>Khaled Tarazi *(Admitted pro hac vice)*<br>1201 W. Peachtree Street, NW, 14th Floor<br>Atlanta, Georgia 30309-3471<br>Telephone: (404) 572-6600<br>Facsimile: (404) 572-6999<br>Email: mark.duedall@bclplaw.com<br>         leah.fiorenza@bclplaw.com<br>         khaled.tarazi@bclplaw.com | **BRYAN CAVE LEIGHTON PAISNER LLP**<br>Andrew J. Schoulder *(Admitted pro hac vice)*<br>1290 Avenue of the Americas<br>New York, New York 10104-3300<br>Telephone: (212) 541-2000<br>Facsimile: (212) 541-4630<br>Email: andrew.schoulder@bclplaw.com<br><br>*Co-Counsel to the Debtors and Debtors-in-Possession* |