## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OLD LC, INC., *et al.*,[1] | ) | Case No. 19-11791 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| ———————————————— | ) | |
| | ) | |
| OLD LC, INC. | ) | |
| (F/K/A LOOT CRATE, INC.), | ) | Adversary Proceeding No. 19-50419 (BLS) |
| | ) | |
| Plaintiff, | ) | **Objection Deadline:  March 19, 2020 at 4:00 p.m.** |
| v. | ) | **Hearing Date: March 26, 2020 at 10:30 a.m. (ET)** |
| | ) | |
| WORLDPAY, LLC (F/K/A VANTIV, LLC) | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 105(a) AND BANKRUTPCY RULE 9019, AUTHORIZING AND APPROVING ENTRY INTO A SETTLEMENT WITH WORLDPAY, LLC f/k/a VANTIV LLC

Old LC, Inc., Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc. (collectively, the "***Debtors***")[2] file this Motion (the "***Motion***") for an order, substantially in the form attached hereto as Exhibit A (the "***Proposed Order")***, pursuant to section 105(a) of title 11

---

[1]     The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Old LC, Inc. (7119), Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc.  The Debtors' noticing address in these Chapter 11 cases is 3401 Pasadena Avenue, Los Angeles, CA 90031.

[2]     The Debtors were formerly named Loot Crate, Inc., Loot Crate Holdings, Inc., LC Funding, Inc., and Loot Crate Parent, Inc.  Following the closing of the sale of substantially all of the Debtors' assets, the Debtors filed the necessary documentation in the applicable jurisdictions to change their corporate names and filed the *Notice of Changes of Debtors' Names and Case Caption* [D.I. 265] with the Court, all in accordance with the terms of the sale and the order approving the same [D.I. 254].

of the United States Code (the "**Bankruptcy Code**") and Federal Rule of Bankruptcy Procedure 9019 (the "**Bankruptcy Rules**"), (i) authorizing and approving the Debtors' entry into that certain *Stipulation and Settlement Agreement* (the "**Settlement Agreement**"), in the form attached as Exhibit 1 to the Proposed Order, with Worldpay, LLC f/k/a Vantiv LLC ("**Worldpay**") and (ii) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:

## Jurisdiction, Venue, and Statutory Predicate

1.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.     Venue of these cases is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory predicates for the relief requested in this Motion are Bankruptcy Code section 105(a) and Bankruptcy Rule 9019.

## General Background

4.     On August 11, 2019 for Old LC, Inc., Old LC Holdings, Inc., and Old LCF, Inc., and on August 12, 2019 for Old LC Parent, Inc. (for each Debtor, the "**Petition Date**"), the Debtors filed voluntary petitions with this Court under chapter 11 of title 11 of the Bankruptcy Code.  The Debtors' Chapter 11 cases (collectively, the "**Cases**") are consolidated for procedural purposes only and administered jointly.  The Debtors are authorized to continue to operate and manage their businesses and assets as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.      As of the Petition Date, the Debtors operated a subscription box service catering to fandom and enthusiasts through "crates" curated with "geek and gamer products" each month. On October 1, 2019, the Debtors closed on a sale of substantially all of their assets to Loot Crate Acquisition LLC ("**LCA**") pursuant to the Court's order approving the sale.

6.      Further information about the Debtors and these Cases and pertinent facts in support of this Motion can be found in the *Declaration of Stuart Kaufman in Support of First Day Motions and Related Relief* (the "**First Day Declaration**") [D.I. 4], which is incorporated by reference.

7.      On August 22, 2019, an official committee of unsecured creditors was appointed in these Cases (the "**Creditors' Committee**").  No request has been made for the appointment of an examiner or trustee.

**Factual Background**

8.      Since approximately July 28, 2017, Worldpay processed credit card payments for the Debtors' customers pursuant to a Bank Card Merchant Agreement (as amended, supplemented, or modified, and including all exhibits and schedules, the "**Processing Agreement**").

9.      The Processing Agreement authorizes Worldpay to (i) establish from amounts payable to the Debtors under the Processing Agreement, and/or cause the Debtors to prepay to Worldpay, a reserve of funds satisfactory to Worldpay to cover anticipated fees, chargebacks, returns, and any other applicable assessments and/or (ii) require the Debtors to establish an irrevocable standby letter of credit in a form and amount acceptable to Worldpay in its sole discretion, as collateral for, among other things, anticipated chargebacks and fees. Further, the

Processing Agreement authorized Worldpay to charge the Debtors a fee calculated as a percentage of each payment processed for the Debtors by Worldpay ("***Processing Fee***").

10.     As of the Petition Date, Worldpay withheld and reserved $1,736,135.96, comprised of a portion of certain payments made by the Debtors' customers using Worldpay's credit card processing services (the "***Reserve***").

11.     On October 1, 2019, the Court entered an order approving the sale of substantially all of the Debtors' assets, including the Debtors' interest in the Reserve, if any, to The Loot Crate Company LLC f/k/a Loot Crate Acquisition LLC ("***TLC***") (the "***Sale Order***") [D.I 254].

12.     On October 16, 2019, the Debtors filed an adversary complaint (as amended on November 6, 2019) (the "***Complaint***"), Adv. Proc. No. 19-50419 (the ("***Adversary Proceeding***"), against Worldpay, seeking (i) to surcharge the Reserve held by Worldpay pursuant to Bankruptcy Code section 506(c), and (ii) declaratory relief, injunctive relief, and monetary damages arising from Worldpay's alleged willful violation of the automatic stay (the "***Claims***").

13.     The Debtors and Worldpay wish to resolve the dispute with respect to the Reserve and the Claims that are the subject of the Adversary Proceeding, on the terms and conditions set out in the Settlement Agreement.

<u>**Summary of the Settlement Agreement**</u>[3]

14.     Within seven business days after the Court enters the Proposed Order approving the Settlement Agreement, which Proposed Order becomes final and non-appealable (the "***Effective Date***"), Worldpay will pay to TLC or its designee the total sum of $700,000.00.

15.     Within seven business days after the Effective Date, Worldpay will release and deliver all funds held in the Reserve as of the date of the Settlement Agreement, less

---

[3] In the event of a conflict between any term addressed in this summary with any term in the Settlement Agreement, the Settlement Agreement will govern in all respects.

$200,000.00, which will continue to be held in the Reserve by Worldpay for the purpose of compensating refunds, claims, chargebacks, reversals, and transaction fees, if any, authorized under the Processing Agreement for all orders placed, whether pre- or post-petition, by the Debtors' customers using Worldpay's credit card processing services. Any funds remaining in the Reserve on the first anniversary of the Effective Date will be released by Worldpay and turned over to TLC within five business dates thereafter.

16.     TLC will fulfill and ship all valid, outstanding prepetition orders placed by the Debtors' customers using Worldpay's credit card processing services; *provided, however*, that TLC is not obligated to fulfill and ship any customer orders that, prior to the Effective Date, either have been, or have been requested to be, canceled by the customer or subjected to a chargeback.

17.     As of the Effective Date, the Processing Agreement is deemed (i) rejected pursuant to Bankruptcy Code section 365, and (ii) terminated by mutual consent of the parties.

18.     Within five business days after the Effective Date, the Debtors will dismiss the Complaint, with prejudice, with the Debtors and Worldpay to bear their own attorneys' fees and costs.

19.     The parties will exchange releases, as set forth in detail in the Settlement Agreement.

## **Relief Requested**

20.     By this Motion, the Debtors request the entry of an order, pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 9019(a), authorizing and approving the Debtors' entry into the Settlement Agreement, and granting related relief.

**Basis for Relief**

21.    Bankruptcy Code section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  *See* 11 U.S.C. § 105(a).  Bankruptcy Rule 9019 provides, in pertinent part, that "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  *See* Fed. R. Bankr. P. 9019(a).

22.    "The federal courts have a well-established policy of encouraging settlement to promote judicial economy and limit the waste of judicial resources."  *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F. Supp. 2d 376, 384 (S.D.N.Y. 2007); *see also, e.g., U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 27-28 (1994) (discussing the general utility of settlement vis-à-vis judicial economy).  The force of this established federal policy is particularly acute in the bankruptcy context, where compromises and settlements are "a normal part of the process of reorganization."  *Protective Comm. for Indp. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).  Indeed, in order to "minimize litigation and expedite the administration of a bankruptcy estate, 'compromises are favored in bankruptcy.'"  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. rev. 1993)); *see also In re Penn. Cent. Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979); *In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *In re Culmtech, Ltd.*, 118 B.R. 273, 238 (Bankr. M.D. Pa. 1990).

23.    The decision whether to approve a proposed settlement is committed to the discretion of the bankruptcy court, "which must determine if the compromise is fair, reasonable, and in the interest of the estate."  *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).  In exercising that discretion, the Third Circuit Court of Appeals has stated that courts should

consider "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin,* 91 F.3d at 393; *see also Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006); *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998). The proponent of a settlement is not required to demonstrate "that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'" *In re World Health*, 344 B.R. at 296 (internal citations and quotation marks omitted); *see also, e.g., Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) (Sotomayor, J.) ("[I]n assessing the fairness of the settlement, a judge does not have to be convinced that the settlement is the best possible compromise or that the parties have maximized their recovery."); *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[T]he court does not have to be convinced that the settlement is the best possible compromise.").

24.     The Debtors have determined, in an exercise of sound business judgment, that the terms of the Settlement Agreement are fair and reasonable and that the best interests of the Debtors and their estates will be served by the entry of the Proposed Order. The terms of the Settlement Agreement are the product of good faith, arm's-length between the Debtors, TLC and Worldpay and fall within the range of litigation possibilities.

25.     The Settlement Agreement results in the release of the Reserve (less the amount that the parties agree will continue to be reserved) plus payment of the Settlement Amount. Moreover, the settlement embodied in the Settlement Agreement avoids the need for continued litigation with Worldpay, which litigation would necessarily involve additional costs, delay, and uncertainty inherent in any litigation – with no guarantee of a result at least as favorable as the

Settlement Agreement.  By contrast, entry into the Settlement Agreement removes those risks and provides a certain and favorable outcome.

26.     The settlement is also a very important step to any potential resolution of this case.  Specifically, first, the estate is relieved of a substantial, contingent claim held by Worldpay.  Second, by virtue of the settlement, TLC will honor substantial pre-petition obligations of the Debtors to consumers – which **may** otherwise be entitled to priority under Section 507(a)(7) (although the "subscription model" is a rather foreign concept to the language of Section 507(a)(7)).  Third, the settlement resolves the litigation among the Debtors and Worldpay, which would otherwise be thoroughly litigated based on the extensive briefing to date, merely at the motion to dismiss phase.  Thus, the settlement is very important to the wind-down of these estates, and very beneficial to the Debtors, Worldpay, TLC, customers with undelivered boxes and the Debtors' creditors.

27.     Accordingly, the Debtors respectfully submit that the Settlement Agreement is fair, reasonable, and in the best interests of the estate and should therefore be approved under Bankruptcy Rule 9019 and Bankruptcy Code section 105(a).

## **Request for Waiver of Stay**

28.     The Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), any "Order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  The Debtors respectfully submit that, in the event any such stay is even applicable, a waiver of such a stay is appropriate to permit the parties to promptly consummate the settlement and finalize the Settlement Agreement.

**No Prior Request**

29.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

**Consent to Jurisdiction**

30.     Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

**Notice**

31.     Notice of this Motion will be provided to: (a) the Office of the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) counsel to the DIP Lender; (d) Wells Fargo Bank, N.A.; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the Office of the United States Attorney for the District of Delaware; (h) counsel to Worldpay; (i) Delaware State Treasury; (j) the Secretary of State of Delaware; and (k) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## Conclusion

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Proposed Order granting the relief requested herein and (ii) grant such other and further relief as may be just and proper under the circumstances.

Dated: March 4, 2020
Wilmington, Delaware

**ROBINSON & COLE LLP**

*/s/ Jamie L. Edmonson*
Natalie D. Ramsey (No. 5378)
Jamie L. Edmonson (No. 4247)
Mark A. Fink (No. 3946)
1201 N. Market Street, Suite 1406
Wilmington, Delaware 19801
Telephone: (302) 516-1700
Facsimile:   (302) 516-1699
Email:  nramsey@rc.com
        jedmonson@rc.com
        mfink@rc.com

*Co-counsel to the Debtors and Debtors-in-Possession*