# **EXHIBIT B**

13475705.v3



May 11, 2022

**VIA EMAIL**

Official Committee of Unsecured Creditors of
Old LC, Inc.; Old LC Holdings, Inc.; Old LCF, Inc.; and Old LC Parent, Inc.
c/o:   Joel Bailey, Esq., Hedrick Kring Bailey, PLLC
         Jeffrey R. Waxman, Esq., Morris James LLP

Dear Joel and Jeff:

We are pleased to provide this term sheet ("Term Sheet") for a proposed transaction (the "Transaction") between Statera Capital, LLC or its designated affiliate ("Investor") one the one hand, and Old LC, Inc.; Old LC Holdings, Inc.; Old LCF, Inc.; and Old LC Parent, Inc. (collectively, the Debtors"), and the Official Committee of Unsecured Creditors (the "Committee," and together with the Debtors, the "Counterparties") (Investor and Counterparties are each a "Party" and collectively the "Parties").

The Transaction is subject to the completion of due diligence and negotiation of definitive documents (such documents, the "Transaction Documents").  This Term Sheet outlines certain material terms of a potential investment but does not summarize all the conditions, covenants, representations, warranties, and other provisions to be contained in the Transaction Documents.  Except for the sections below entitled "Transaction Costs," "Confidentiality," "No Shop," "Governing Law; Venue," and "Execution of Term Sheet," which are binding agreements between the Parties, this Term Sheet is not a binding agreement on any Party to proceed with the Transaction and will not impose any obligation or liability on any Party if the Transaction is not consummated.  Any such agreement will be made only if and when the Transaction Documents are agreed to and executed.

| | |
|---|---|
| **Parties** | Investor and Counterparties. |
| **Commitment** | Up to $500,000 (five hundred thousand dollars) plus Transaction Costs (the "Commitment") would be committed to Counterparties in connection with the Litigation.  "Litigation" means the adversary proceeding styled *Official Committee of Unsecured Creditors of Old LC, Inc., et al., For an on Behalf of the Estates of Old LLC, Inc., et al., v. Upfront V, LP et al.*, Adv. No. 20-51002 (BLS), pending in the United States Bankruptcy Court for the District of Delaware as well as any appeals, related and subsequent judicial proceedings, additional cases, adversary proceedings, lawsuits, arbitration matters, bankruptcy proceedings, receivership actions, or other proceedings filed or efforts initiated by or on behalf of Counterparties based on the same or substantially similar claims. |
| | During the Term, the Parties agree that Counterparties may |



**Error! Unknown document property name.**

**The Official Committee of Unsecured Creditors of Old LC, Inc. et al.**
**May 11, 2022**

|  |  |
|---|---|
|  | request an increase to the Commitment of up to $250,000 (the "Incremental Commitment"). The Investor may elect to fund the Incremental Commitment in its sole discretion and subject to the terms and conditions upon which the Parties mutually agree in writing. |
| **Transaction** | A prepaid forward purchase agreement secured by the Litigation Proceeds. "Litigation Proceeds" means any and all consideration payable or transferred directly or indirectly to or for the benefit of any Counterparty in connection with the Litigation, including from any settlements, judgments, arbitration awards, distributions, or otherwise. The Litigation Proceeds will be calculated and determined without taking into consideration and prior to deduction of (i) any taxes payable by any Counterparty in connection with the Litigation Proceeds, (ii) setoffs of any kind, including setoffs in respect of any claim or counterclaim asserted against any Counterparty by any person, or (iii) expenses incurred in connection with the Litigation or the collection of any Litigation Proceeds. |
| **Funding of the Commitment** | Upon the closing of the Transaction, Investor shall pay [$110,000 (one hundred and ten thousand dollars)] of the Commitment to Hedrick Kring Bailey, PLLC ("HKB") on Counterparties' behalf as reimbursement for costs previously paid by HKB on the Committee's behalf prior to the close of the Transaction and in connection with the Litigation. |
|  | Thereafter, Counterparties may periodically draw amounts from the remaining Commitment as follows; (i) up to $75,000 (seventy-five thousand dollars) (the "Estate Expenses") may be drawn for expenses incurred by the Debtors' estates, including fees due to the Office of the United States Trustee, and expenses and fees due to the Debtors' claims and noticing agent, and extension of D&O coverage. Other than amounts necessary for the preparation of overdue and future monthly operating reports, in no event shall any of the Estate Expenses be used for payment on account of any professional fees or expenses except as set forth herein, or payment to any officer, director, or employee of the Debtors; and (ii) up to $315,000 (three hundred and fifteen thousand dollars may be drawn for reasonable out-of-pocket costs (including expert witness fees) related to the Litigation, which are incurred on or after closing this Transaction. All draws are expressly subject to a written request, including copies of underlying invoices for all amounts to be paid (the "Invoices"), or in the case of payment of fees due to the United States Trustee, a copy of the monthly operating report evidencing fees that are due. |

2

**Error! Unknown document property name.**

**The Official Committee of Unsecured Creditors of Old LC, Inc. et al.**
**May 11, 2022**

|  |  |
|---|---|
|  | Payments of the Commitment are each a "Deployment" and collectively, "Deployments." |
|  | Deployments shall be disbursed directly to a Counterparty, its counsel, or approved vendors. Deployment requests shall occur not more than once per calendar month and shall be for no less than $15,000 (fifteen thousand dollars). Upon any request supported by Invoices and other documentation, which, in the event of any request by the Debtors, shall also be sent to counsel for the Committee, Lender shall wire the requested amount within 14 (fourteen) business days. |
|  | The Commitment may not be used for any amounts that a court or arbitrator orders to be paid by a Counterparty to adverse party, its counsel, or into the court or arbitration tribunal. |
| **Return on Investment** | In exchange for the Commitment, Counterparties shall distribute to Investor an amount of the Litigation Proceeds equal to the product of the Multiple *times* the total Deployments (such amount, the "Return on Investment"). |
|  | The "Multiple" shall equal 2.2x; provided, that if the full Return on Investment is not paid to Investor by November 30, 2022, the Multiple will increase to 2.5x as of December 1, 2022 and will increase again by 0.5x at each six-month anniversary thereafter. |
|  | Notwithstanding the foregoing, the Return on Investment shall be no less than the sum of the total Deployments *plus* $300,000 (three hundred thousand dollars). |
|  | Counterparties will satisfy their obligation to pay Investor its full Return on Investment before making any other payments from the Litigation Proceeds to any other person or entity, including Counterparties' counsel, other law firms, owners, or creditors. |
| **Commitment Not Revolving** | The Commitment is not revolving. Upon each Deployment, the total remaining Commitment shall be reduced by an equal amount. |
| **Collateral** | The Transaction will be secured by a first priority perfected security interest in the Litigation Proceeds and related collateral only (together, the "Collateral"), and Investor may file an "all assets" UCC financing statement to evidence its security interest in the Collateral. |
|  | For avoidance of doubt, if the Litigation terminates unfavorably such that Litigation Proceeds are never recovered by a Counterparty, then in such a case, all Deployments shall be non- |

**Error! Unknown document property name.**

The Official Committee of Unsecured Creditors of Old LC, Inc. et al.
May 11, 2022

|  |  |
|---|---|
|  | recourse to Counterparties. |
| **Assignments of Collateral** | Other than the Sale of substantially all of the Debtors' assets and the Term Sheet, which were approved by the Bankruptcy Court on [_____ and _____], respectively, Counterparties warrant that they previously have not sold, assigned, or otherwise disposed of any interest in, under, or to the Collateral to any person, and Counterparties agree and warrant that they will not sell, assign, or otherwise dispose of any interest in, under, or to the Collateral to any person without the prior written consent of Investor. |
| **Control of Litigation** | Investor does not seek contractual or other rights to direct, supervise, manage, or otherwise control the Litigation. Investor shall have no authority to direct Counterparties or their counsel and shall not request, receive, or otherwise become party to attorney-client privileged communications between a Counterparty and its counsel. Counterparties shall have sole authority to accept or reject proposed settlements related to any litigation. Should Counterparties and their counsel continue the Litigation or pursue future related litigation or arbitration, it shall be based on the independent belief that the claims are meritorious and independent of any encouragement or interference from Investor. The Transaction in no way constrains Counterparties' or their counsel's ability to decline to pursue litigation or arbitration for any reason, including should Counterparties or their counsel determine that litigation or arbitration is not meritorious. |
| **Confidentiality** | Except as otherwise agreed in writing, the Parties hereby confirm that the existence and contents of this Term Sheet, related discussions between the Parties, and any ultimate Transaction shall be held in the strictest confidence pursuant to the terms of the Mutual Non-Disclosure and Common Interest Agreement between Investor and the Committee dated March 23, 2022, however, upon execution of this agreement, the Counterparties may attach this Term Sheet to a motion seeking approval of the Transaction under the proposed terms herein. |
| **Conditions to Closing** | (i) Investor's satisfaction with its due diligence investigation of Counterparties, the Litigation, counsel and counsel's fee and cost budget for the Litigation and (ii) Debtors' and the court's approval of the Transaction; and (iii) execution of the Transaction Documents. |
| **Transaction Documents** | Provided that Investor is satisfied with its due diligence investigation and counsel's engagement, Counterparties will endeavor in good faith to negotiate and execute the Transaction Documents as soon as practicable after signing this Term Sheet. |

The Official Committee of Unsecured Creditors of Old LC, Inc. et al.
May 11, 2022

| | |
|---|---|
| **Transaction Costs** | Counterparties shall be responsible for (i) up to $30,000 (thirty thousand dollars) of Investor's out-of-pocket costs and expenses incurred in connection with the Transaction (the "Transaction Costs") and (ii) Counterparties' own out-of-pocket costs and expenses incurred in connection with the Transaction.<br><br>Transaction Costs shall be payable at the time of the closing of the Transaction, at which time Transaction Costs shall be treated as a Deployment paid on the date the Transaction Documents are executed. |
| **No Shop** | In consideration of efforts to be expended by Investor in connection with due diligence and documentation of the Transaction, for a period of 30 days from the date of execution of this Term Sheet, neither Counterparty nor any representative or affiliate of a Counterparty will, directly or indirectly, enter into, solicit or encourage, or furnish information with respect to, any loan, sale, investment, or other transaction involving the Litigation, other than as contemplated by this Term Sheet. The foregoing restriction will automatically renew for a subsequent 15-day period unless a Counterparty has notified Investor in writing to the contrary at least seven days before the end of the 30-day term. During such 30-day term and the subsequent renewal term, if any, Counterparties will promptly notify Investor of their receipt of any offer, proposal, or solicitation concerning any type of loan, sale, investment, or other transaction involving the Litigation. From the date of execution hereof through the date the Transaction Documents are executed, Counterparties will cooperate with Investor in Investor's due diligence investigation. Notwithstanding the foregoing, nothing herein shall impair or otherwise affect the Counterparties' fiduciary obligations to respond to any inquiry by proposed lenders.<br><br>In the event that Investor notifies a Counterparty that it has successfully completed its diligence and wishes to complete the Transaction, the no-shop period shall be extended by 30 days from the date of such notice to allow for the preparation and execution of the Transaction Documents. |
| **Governing Law; Venue** | Any controversy or claim arising out of or relating to this Term Sheet shall be decided in accordance with Delaware law, without reference to Delaware's choice of law rules (as this is the state of organization of Investor), and settled by arbitration in Chicago, Illinois administered by the American Arbitration Association under its Commercial Arbitration Rules. |
| **Execution of Term Sheet** | This Term Sheet may be executed in any number of counterparts, |

**The Official Committee of Unsecured Creditors of Old LC, Inc. et al.**
**May 11, 2022**

|  |  |
|---|---|
|  | each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one agreement. Transmission by electronic mail or other form of electronic transmission of an executed counterpart of this Term Sheet will be deemed to constitute due and sufficient delivery of such counterpart. |
| **Bankruptcy Court Approval** | Any Transaction contemplated by this Term Sheet or subsequent documentation shall be expressly subject to the approval of the Bankruptcy Court after notice and an opportunity for hearing. |
| **Expiration** | The offer proposed by this Term Sheet expires if not accepted by May 17, 2022. |

SIGNATURE PAGE FOLLOWS

Error! Unknown document property name.

The Official Committee of Unsecured Creditors of Old LC, Inc. et al.
May 11, 2022

If the foregoing confirms our agreement, please sign and return this Term Sheet to the undersigned.

Sincerely,

STATERA CAPITAL, LLC

By: _____

Name: CHARLES HODGKINS

Title: MANAGING DIRECTOR

**AGREED:**

| | |
|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF OLD LC, INC.; OLD LC HOLDINGS, INC.; OLD LCF, INC.; AND OLD LC PARENT, INC. | OLD LC, INC. |
| By: _____ | By: _____ |
| Name: | Name: |
| Title: | Title: |
| OLD LC HOLDINGS, INC. | OLD LCF, INC. |
| By: _____ | By: _____ |
| Name: | Name: |
| Title: | Title: |

OLD LC PARENT, INC.

By: _____

Name:

Title:

7

Case 19-11791-BLS   Doc 833-3   Filed 05/26/22   Page 9 of 10

The Official Committee of Unsecured Creditors of Old LC, Inc. et al.
May 11, 2022

If the foregoing confirms our agreement, please sign and return this Term Sheet to the undersigned.

Sincerely,

STATERA CAPITAL, LLC

By: _____

Name:

Title:

**AGREED:**

| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF OLD LC, INC.; OLD LC HOLDINGS, INC.; OLD LCF, INC.; AND OLD LC PARENT, INC. | OLD LC, INC. |
|---|---|
| By: */s/ Jeff Waxman* <br> Name: Jeff Waxman <br> Title: Counsel for the Committee | By: _____ <br> Name: <br> Title: |
| OLD LC HOLDINGS, INC. | OLD LCF, INC. |
| By: _____ <br> Name: <br> Title: | By: _____ <br> Name: <br> Title: |
| OLD LC PARENT, INC. | |
| By: _____ <br> Name: <br> Title: | |

7

The Official Committee of Unsecured Creditors of Old LC, Inc. et al.
May 11, 2022

If the foregoing confirms our agreement, please sign and return this Term Sheet to the undersigned.

Sincerely,

STATERA CAPITAL, LLC

By: _____

Name:

Title:

**AGREED:**

| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF OLD LC, INC.; OLD LC HOLDINGS, INC.; OLD LCF, INC.; AND OLD LC PARENT, INC. | OLD LC, INC. |

By: _____

Name:

Title:

By: */s/ Andrew Schoulder*

Name: Andrew Schoulder

Title: Authorized Signatory, Counsel to Old LC, Inc.

OLD LC HOLDINGS, INC.

By: */s/ Andrew Schoulder*

Name: Andrew Schoulder

Title: Authorized Signatory, Counsel to Old LC Holdings, Inc.

OLD LCF, INC.

By: */s/ Andrew Schoulder*

Name: Andrew Schoulder

Title: Authorized Signatory, Counsel to Old LCF, Inc.

OLD LC PARENT, INC.

By: */s/ Andrew Schoulder*

Name: Andrew Schoulder

Title: Authorized Signatory, Counsel to Old LC Parent, Inc.