# **<u>EXHIBIT C</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| OLD LC, INC., *et al.,*[1] | Case No. 19-11791 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Obj. Deadline: _____** |
| | **Hearing Date: _____** |

## EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER, PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE, CONVERTING THE DEBTORS' CASES TO CASES UNDER CHAPTER 7

The Official Committee of Unsecured Creditors (the "Committee") of Old LC, Inc. and its affiliated debtors and debtors-in-possession (the "Debtors"), by and through its undersigned counsel, hereby submits this *Emergency Motion of the Official Committee of Unsecured Creditors for an Order, Pursuant to Section 1112(b) of the Bankruptcy Code, Converting the Debtors' Cases to Cases Under Chapter 7* (the "Motion"), and, in support thereof, respectfully represents and states as follows:

## JURISDICTION

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(s) and 1112(b) and Bankruptcy Rule 9006(b).

---

[1]  The Debtors are the following four entities (the last four digits of their respective taxpayer identification number, if any, follow in parentheses): Old LC, Inc. (7119), Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc.  The Debtors' noticing address in these Chapter 11 cases is 3401 Pasadena Avenue, Los Angeles, CA 90031.

## PRELIMINARY STATEMENT

4.      Pursuant to 1112(b), the Committee seeks immediate conversion of these cases to Chapter 7 in order to avoid continuing losses to and diminution of estates' assets, especially given that there is no reasonable likelihood of rehabilitation of the Debtors' business as a result of the completed sale, and because the Debtors are unlikely to effectuate the confirmation of a Chapter 11 plan.  Conversion of these cases and appointment of a Chapter 7 trustee are urgent matters in light of the rapid diminution of the estates.

5.      These cases have been pending for over eleven (11) months with little to no advancement toward a successful reorganization.  The Debtors filed the cases with the intent to sell substantially all of their assets. To that end, the cases were successful; the sale of the Debtors' assets to Loot Crate Acquisition LLC ("LCA" or the "Purchaser") was consummated approximately nine (9) months ago, and there is only one asset remaining to be potentially administered: potential causes of action against certain former officers and directors (the "D&O Claims").  Pursuant to the sale agreement, the proceeds of the D&O Claims are property of LCA.

6.      Despite significant efforts by the Debtors, the Committee, and LCA to reach an agreement that would result in the Debtors and their estates receiving proceeds from the D&O Claims, the parties have been unable to reach a resolution.  Accordingly, the Court does not have jurisdiction with respect to the D&O Claims.

7.      Moreover, even assuming that the parties were to reach an agreement with respect to the D&O Claims, the administrative expenses that would need to be incurred in order to get to a distribution would be so significant that the estates would almost certainly be administratively insolvent, if they are not already.  Among other things, the Court has yet to approve a bar date motion (which would then need to be served).  Additionally, before the estates could make a

2

distribution, the Court would need to approve a disclosure statement that would then need to be served upon all creditors for solicitation of a plan. In the meantime, the estates have borne - and will continue to bear – the hefty costs of administration of these cases, including the fees of two sets of professionals, directors' fees, and quarterly fees of the United States Trustee. Simply stated, keeping these cases in Chapter 11 does no one any good (other than LCA and the professionals), particularly in contrast to these cases proceeding in Chapter 7.

8.      A Chapter 7 trustee is capable of conducting the same (limited) activities in these cases as the Debtors, at a significantly lower cost. Among other things, the Chapter 7 trustee (once appointed) can negotiate with LCA, and if they are able to reach an agreement, the cases can move forward without the burden of paying the costs of two sets of professionals. Additionally, the estates would not bear the cost of issuing a bar date notice, or needing approval of a disclosure statement or plan in order to make distributions. Moreover, conversion would eliminate the significant expense of directors' fees going forward.

9.      In sum, Chapter 7 is the most logical and prudent path forward to conclusion of these matters in a way that maximizes value and serves the best interests of the estates and unsecured creditors, and the Committee respectfully submits that an Order should be entered converting these cases to Chapter 7.

## PROCEDURAL BACKGROUND

10.      The Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on August 11, 2019 (the "Petition Date").

11.      The Debtors have continued in the possession of their property and has continued to operate and manage their business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3

12.    On September 5, 2019, the Debtors filed an application to retain Bryan [Docket No. 128], by and through which the Debtors sought to retain Bryan Cave as counsel to the Debtors pursuant to 11 U.S.C. 327(a), nunc pro tunc to the Petition Date (the "<u>Original Application</u>").   Bryan Cave was retained pursuant to the Original Application, while Robinson+Cole was retained to serve as Debtors' Delaware and conflicts counsel.

13.    On August 22, 2019, the UST appointed the seven (7) member Committee [Docket No. 63] pursuant to section 1102(a)(1) of the Bankruptcy Code.   Thereafter, the Committee selected Morris James LLP ("<u>Morris James</u>") to serve as its counsel, and on September 18, 2019, the Court entered an Order approving the retention of Morris James as counsel to the Committee, nunc pro tunc to August 22, 2019 [Docket No. 182].   The Committee requested permission to retain Dundon Advisers LLP ("<u>Dundon</u>") as its financial advisor on August 28, 2019 [Docket No. 89], which request was approved by the Court on September 18, 2019 [Docket No. 181].

A.    **The Sale of the Debtors' Assets**

14.    Substantially contemporaneously with the filing of the Debtors' bankruptcy petitions, the Debtors filed a motion to approve bidding procedures to sell substantially all of their assets [Docket No. 147], and on October 1,  2019, the Court entered an Order approving the Sale Motion, by and through which the Debtors' assets were sold (the "<u>Sale</u>") to LCA [Docket No. 254].   On or about October 1, 2019, the Sale was consummated.

15.    Significantly, among the assets sold to the Purchaser were the D&O Claims.   <u>See</u> Sale Agreement, § 2.1(u)(i).   This provision specifically provided that the sale included:

> all rights, claims or causes of action of Sellers, and proceeds thereof, of whatever kind or nature, and whether asserted or unasserted, including, without limitation any causes of action against current and former directors and officers of Sellers and any affiliates of such directors and officers . . . .if Purchaser elects, in its sole

4

discretion, to assume such D&O Claim Rights within six (6) months of the Closing Date, provided, however, the Sellers may only pursue such D&O Claim Rights with Purchaser's written consent and at Purchaser's direction, as the proceeds thereof would remain Purchased Assets;

Therefore, the Purchaser had a limited window of only six months from the closing of the Sale to bring the action, however even after that exclusive window has passed, the Debtors can pursue the D&O Claims only with the consent of the Purchaser, and the proceeds are assets of the Purchaser.

**B.**     **Investigation of D&O Claims and 2004 Motion**

16.     Even prior to the filing of April 22, 2020, the Debtors' counsel informed the Committee that the Debtors were investigating and analyzing potential claims against the Debtors' former insiders.  Further, the Debtors informed the Committee that they would be sending and had sent requests for documents and information from certain parties.

17.     On April 22, 2020, the Debtors filed an omnibus motion for examination under Rule 2004 of the Federal Rules of Bankruptcy procedure [Docket No. 492] (the "2004 Motion") examination from Upfront V, L.P., c/o Upfront Ventures, Mark Suster, Dana Kibler, Ynon Kreiz, Breakwater Credit Opportunity Fund, L.P., Sair Mansour, Aamir Amdani, Darrick Geant, Erick Beckman, and Joe Kaczorowsi (collectively, the "Examinees").

18.     Two responses in opposition to the 2004 Motion were filed.  On April 30, 2020, Upfront V, L.P., Mark Suster, and Dana Kibler (collectively, the "Upfront Examinees") filed limited opposition to the motion [Docket No. 506] and on May 1, 2020, Breakwater Credit Opportunity Fund, L.P., Saif Mansour, Aamir Amdani, Darrick Geant, Eric Beckman, and Joe Kaczorowski (collectively, the "Breakwater Examinees") filed a limited objection [Docket No. 511].  Both of the limited objections raise issues with respect to whether Bryan Cave's actions

and representation of the Debtors prior to the Petition Date disqualify it from conducting the investigation on behalf of the Debtors.

19.     In response to the limited objections, the undersigned spoke separately with counsel for the Debtors, counsel for the Upfront Examinees, and counsel for the Breakwater Examinees.  By agreement of the parties, the Debtors agreed to adjourn the hearing to consider the 2004 Motion, and Bryan Cave would file a supplemental retention application, and the 2004 Motion would be considered in tandem with the supplemental application.

20.     Additionally, counsel for the Upfront Examinees and the Breakwater Examinees each agreed that this adjournment would not be used to delay the production of the documents and information requested by the 2004 Motion, and that each of the Examinees would use the time to cull and prepare for production those documents responsive to the Debtors' requests, and in the event that the Bryan Cave is conflicted, the responsive documents would be produced to the Committee.  This agreement was without prejudice to the rights of Examinees to object to the specific requests.  The Committee does not have any reason to believe, nor does the Committee anticipate, that the Examinees will assert such objections vexatiously or in bad faith.

21.     On May 19, 2020, the Debtors filed the a supplemental retention application (the "Supplemental Application"), pursuant to which the Debtors seek to retain Bryan Cave to investigate and bring the D&O Claims pursuant to a supplemental engagement letter. Contemporaneously with the Supplemental Application, the Debtors filed the Motion to Seal, by and through which, it sought to seal certain portions of Bryan Cave's supplemental engagement letter to address the economic terms of the supplemental engagement.  Notably, and as set forth in the Motion to Seal, the Debtors provided the Committee with an unredacted form of the Retention Application and the underlying engagement letter.

6

22.    On June 6, 2020, the Upfront Examinees and the Breakwater Examinees each filed objections to the Supplemental Application [Docket No. 547 and 548], and the Upfront Examinees and the Breakwater Examinees each filed objections to the motion to Seal [Docket No. 548 and 551].

23.    On June 6, 2020, the Committee filed a response to the Supplemental Retention Application [Docket No. 553].  The Committee took no position to the issue of conflicts, but stated that the D&O Claims could not and should not be pursued by the Debtors if the estates do not receive any benefit.  In that case, these bankruptcy cases should either be dismissed or converted to Chapter 7.  At present, all proceeds of the D&O Claims, if brought, would go to LCA.

24.    On June 10, 2020, the Court conducted a hearing on the 2004 Motions and the Supplemental Retention Application and objections thereto.  The Court raised the issues of its jurisdiction to consider causes of action in which the estates have no economic interest.  The two motions were therefore continued.

## C.    Current Status of the Cases

25.    Since the June 10, 2020 hearing, the Committee has extensively engaged in discussions with the Debtors and the Purchaser about a resolution by and through which the estates would receive the benefit of the D&O Claims, net of the amount to be received by counsel and repayment of expenses.  Unfortunately, the parties have not been able to reach an agreement that would yield anything meaningful for the estates.  Or stated another way, as currently situated, the only parties who would benefit from the D&O Claims are LCA and the Debtors' professionals.

26.    Meanwhile, administrative expenses continue to accrue.  The Committee

7

understands that, as of this writing, there are more than six hundred thousand dollars of outstanding administrative expenses (and growing). The Debtors have informed the Committee that while there may currently be sufficient funds to pay those outstanding expenses, there are still fees accruing that are due to the Office of the United States Trustee, and compensation due to the Debtors' directors.[2] Accordingly, even if there is sufficient money to pay the currently due administrative expenses – and there is a significant question whether there is when other accrued, but not yet due, professional fees are included – there are not sufficient funds to get to confirmation of a plan.

27.    At the same time, the liquidation of substantially all of the Debtors' assets was concluded approximately nine (9) months ago. The Debtors, have only one asset remaining to be administered: the D&O Claims, and even then the proceeds of those claims are property of LCA. And of course, if this case were to remain in Chapter 11, the Debtors would still need to establish a bar date, and to prepare and file a plan and disclosure statement before any distribution could be made, presuming any or all of the proceeds to the D&O Claims would any return to creditors.

28.    Taken together, the estates are likely already administratively insolvent, with no interest in any other assets to be marshaled, and even if there were, the Debtors are nowhere near the point of making a distribution. And the path to get to a confirmable plan so that negligible distributions could be made is murky at best.

29.    A Chapter 7 trustee is capable of conducting the same (limited) activities in these cases as the Debtors, at a significantly lower cost. Among other things, the Chapter 7 trustee can negotiate with LCA, and if they are able to reach an agreement, the cases can move forward

---

[2] The Committee understands that from the Petition Date through April 2020, the Debtors paid out a total of $255,272 for board member fees. The Committee does not know how much of those fees is outstanding at this time, but the Committee does not anticipate that the board members intend to continue to serving out of a sense of altruism.

without the burden of paying the costs of two sets of professionals.  Additionally, the estates would not bear the cost of issuing a bar date notice, or preparing and obtaining needing approval of a disclosure statement and plan in order to make distributions.  Moreover, conversion would eliminate the significant expense of directors' fees.

## **RELIEF REQUESTED**

30.    The Committee respectfully requests entry of an order, pursuant to section 1112(b) of the Bankruptcy Code converting the Debtors' Chapter 11 cases to cases under Chapter 7.

## **ARGUMENT**

31.    Under 11 U.S.C. § 1112(b), the Court shall, for cause, convert a case under Chapter 11 to a case under Chapter 7 upon the request of a party in interest,[3] unless the Court determines that dismissal of the case or appointment of a Chapter 11 trustee or an examiner is in the best interest of the creditors and the estate.  11 U.S.C. § 1112(b).

32.    In other words, once the Committee shows by a preponderance of the evidence that cause exists to convert the case to one under Chapter 7, the Court must either convert the case to one under Chapter 7, appoint a Chapter 11 trustee, or dismiss the case.  *See* 7 COLLIER ON BANKRUPTCY ¶ 1112.04[4] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *see also In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994); *In re The Reserves Resort, Spa & Country Club LLC*, No. 12-13316 (KG), 2013 WL 3523289, *2 (Bankr. D. Del. July 12, 2013).  The selection of one of the three alternatives after cause is demonstrated hinges on the best interests of the creditors and the estate.  7 COLLIER ON BANKRUPTCY at ¶ 1112.04[4].

---

[3]    The Committee clearly qualifies as a "party in interest" under 11 U.S.C. § 1109, which provides that "[a] party in interest, including…a creditor's committee…may raise and may appear and be heard on any issue in a case under this Chapter."

11869706/1

33.     "[T]he cause standard continually measures the value of maintaining the process, and also polices the diligence of the debtor or other plan proponent to ensure that the process is proceeding with all deliberate speed and in accordance with the requirements of applicable law." 7 COLLIER ON BANKRUPTCY at ¶ 1112.07[1].   Although "cause" is not defined, section 1112(b)(4) provides a nonexclusive list of 16 "causes" for conversion. 11 U.S.C. § 1112(b)(4)(A)-(P); *In re Am. Capital Equip., LLC*, 688 F.3d 145, 162 n. 10 (3d Cir. 2012) ("the listed examples of cause are not exhaustive"); *In re Mechanical Maintenance, Inc.*, 128 B.R. 382, 386 (E.D. Pa. 1991). At least two separate and independent grounds under the subsections of § 1112(b)(4) exist here and demand conversion of these cases. Specifically, there is both: (a) a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation and (b) an inability to effectuate substantial consummation of a confirmed plan. 11 U.S.C. § 1112(b)(4)(A) and (M).

34.     If the movant establishes "cause," the burden then shifts to the debtor to prove it falls within the § 1112(b)(2) "unusual circumstances" exception to §1112(b)(1)'s mandatory conversion. However, the Third Circuit instructs that "[c]ourts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization." *In re Brown*, 951 F.2d 564, 572 (3d Cir.1991)) (citing *In re Canal Place Ltd. Partnership*, 921 F.2d 569, 577 (5th Cir.1991)); *see also In re Woodbrook Assocs.*, 19 F.E. 312, 317 (7th Cir. 1994) ("The very purpose of § 1112(b) is to cut short [the] plan and confirmation process where it is pointless."). If cause to convert or dismiss is present, the Third Circuit has indicated that it then chooses between conversion and dismissal based on "the best interest of creditors and the estate." *In re Am. Capital Equip.*, LLC, 688 F.3d at 161.

35.     As noted herein taken together, the estates are likely already administratively

insolvent, with no interest in any other assets to be marshaled, and even if there were, the Debtors are nowhere near the point of making a distribution.  Based solely upon the economics, including the Debtors' administrative insolvency, the Committee respectfully submits that Court should convert the Debtors' Chapter 11 cases to Chapter 7 cases because cause for conversion exists and conversion is in the best interest of creditors and these estates.

**A.    Cause Exists to Convert These Cases to a Chapter 7 Liquidation Under 1112(b)(4)(A)**

   i.    The Diminution of the Estates Satisfies 1112(b)(4)(A)

36.    Conversion is warranted where a debtor is "suffering substantial or continuing losses to or diminution of the estate and there is no reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). The inquiry under 1112(b)(4)(A) is twofold. *In re Gateway*, 374 B.R. at 563. "First, the Court must look at the track record of the debtor to determine if it is suffering losses or making gains. Second, the Court must determine whether rehabilitation is likely given the evidence presented at hearing." *Id*.

37.    With respect to the first prong of the test, "[i]n the context of a debtor who has ceased business operations and liquidated virtually all of its assets, any negative cash flow — including that resulting only from administrative expenses — effectively comes straight from the pockets of the creditors. This is enough to satisfy the first element of [continuing loss to or diminution of the estate]." *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 516 (8th Cir. 2004).

38.    There can be no reasonable dispute that the Debtors: (i) have ceased all business operations; (ii) have sold substantially all of their assets and have no ongoing business operations; and (iii) currently have a negative cash flow. The Debtors are essentially a shell with no operations and no prospective ability to produce cash or any other value that offsets their continuing expenses.  Nor are there any assets to be marshaled for the benefit of the estates.

11

ii.     As There Is No Likelihood of Rehabilitation, the Second Prong of 1112(b)(4)(A)
        is Satisfied

39.     The Debtors also fail the second prong of the section 1112(b)(4)(A) test because
they are not seeking to rehabilitate. When considering a motion under Bankruptcy Code section
1112(b), "rehabilitation" means an ability to re-establish the debtor-entity on a firm sound
financial basis. *See In re BH S&B Holdings, LLC*, 439 B.R. at 347 ("rehabilitation means to put
back in good condition and reestablish on a sound basis.").

40.     An intention to "liquidate (rather than rehabilitate), demonstrates that there is no
likelihood of rehabilitation." *In re BH S&B Holdings, LLC*, 439 B.R. at 347; *see also Loop Corp.
v. U.S. Trustee*, 379 F.3d 511 (granting U.S. Trustee's motion after last round negotiations with
lenders failed, and the debtors were cash flow negative, there mounting costs to the estate, and
the plan of liquidation was evidence of a lack of likelihood of rehabilitation). The *BH S&B* court
discussed that though a liquidation plan is permissible, courts have converted or dismissed cases
on facts similar to *Loop* and *BH S&B*. *Id.* at 348 (citing *In re Natrl Plants & Lands Mgmt. Co.,
Ltd.,* 68 B.R. 394, 395 (Bankr.S.D.N.Y.1986) (converting Chapter 11 case, in part, because the
debtor's proposed liquidating plan conceded that the business would be terminated and the
debtor was losing $60,000 per month in Chapter 11).

41.     Here, the Debtors entered bankruptcy with the intent to liquidate, not rehabilitate.
And now, almost a year after the sale of substantially all of the Debtors' assets, the remaining
duties in these cases — wind-down, contingent asset monetization, claims reconciliation and
distribution — can all be done more cheaply, quickly, and fairly by an independent and
disinterested Chapter 7 trustee.   The Committee was supportive of the Debtors' efforts to
transition the businesses to the Purchaser which included the apparent payment of unpaid tax
liabilities through the Chapter 11 process.  At this point however, a Chapter 7 trustee is capable

of conducting the same (limited) activities remaining in these cases as the Debtors, at a significantly lower cost. Among other things, the Chapter 7 trustee can negotiate with LCA, and if they are able to reach an agreement, the cases can move forward without the burden of paying the costs of two sets of professionals. Additionally, the estates would not bear the cost of issuing a bar date notice, or preparing and obtaining approval of a disclosure statement and plan in order to make distributions. Moreover, conversion would eliminate the significant expense of the board members' fees.

42. In sum, Chapter 7 is the most logical and prudent path forward to conclusion of these matters in a way that maximizes value and serves the best interests of unsecured creditors and the estates. Accordingly, cause exists to convert these cases to cases under Chapter 7 of the Bankruptcy Code.

**B.    Cause Also Exists to Convert These Cases to a Chapter 7 Liquidation under 1112(b)(4)(M).**

43. Conversion is warranted where a debtor presents an "inability to effectuate substantial consummation of a confirmed plan." 11 U.S.C. § 1112(b)(4)(M). A "debtor's ability to effectuate a plan may well turn on practical considerations, including whether confirmation can be achieved." *In re Babayoff*, 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011); *see Loop Corp.*, 379 F.3d 511, n. 2 (8th Cir. 2004) (discussing bankruptcy court's skepticism about whether any plan would be confirmable as grounds for cause to convert) (citing *In re Fossum,* 764 F.2d 520, 521-22 (8th Cir. 1985) ("A finding that the [debtors] were unable to effectuate any plan which would be confirmable is a proper basis for dismissal of the [debtors'] Chapter 11 case."); *see also In re Lamar Estates, Inc.*, 6 B.R. 933 (Bankr. E.D. N.Y. 1980) (debtors' inability to effectuate plans of reorganization sufficient cause to convert); *In re DCNC North Carolina I, LLC,* 407 B.R. 651, 665 (Bankr. E.D. Pa. 2009) (same).

44.     One of the purposes of section 1112(b) is to weed out inappropriate Chapter 11 cases at the earliest possible time. As the Seventh Circuit explained, "The very purpose of § 1112(b) is to cut short [the] plan and confirmation process where it is pointless." *In re Woodbrook Assocs.*, 19 F.R. 312, 317 (7th Cir. 1994) (citations omitted).  Further, the Supreme Court has noted "[t]he preservation of business enterprises must not be at the expense of creditors." *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 119 n.14 (1939) (internal citations omitted); *see also In Re Gonic Realty Trust*, 909 F.2d 624, 626-27 (1st Cir. 1990) ("The court [in exercising its discretion under section 1112(b)] must exercise its sound judgment in reaching a determination and must ascertain that the decision is in the best interest of the creditors."). "The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. . . . '[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, Chapter 11 has lost its *raison d'être.*'" *In re Whiteshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985) (internal citations omitted).

45.     The only plan that could be confirmed under the facts of these cases would be a simple liquidating plan whereby the D&O Claims are liquidated post-confirmation, and to the extent that there are any remaining assets available to be reduced to cash, that cash would be distributed to holders of allowed claims.  Such a plan is nothing more than a Chapter 7 liquidation.  There is no advantage gained by conducting this process through a Chapter 11 plan with the attendant administrative expense burden.

46.     An independent Chapter 7 trustee should be appointed to oversee the ultimate liquidation of remaining assets, claim reconciliation, prosecution of any potential causes of action, and eventual distributions which will likely result from the same. The targets of the 2004

examination have complained that Debtors' management and its counsel are too close to the transaction and tangled history and while the Committee takes no position regarding the merits of these claims, a Chapter 7 trustee removes the shroud of secrecy associated with the Debtors' advancing the D&O Claims.  Only with an independent Chapter 7 trustee will the remaining assets of the estates be preserved and distributed equitably to all of the creditors of the estates.

47.     Based upon the foregoing, the Committee respectfully submits that an Order should be entered converting these cases to Chapter 7.

## NOTICE AND PRIOR MOTION

48.     Substantially contemporaneously herewith, the Committee is filing a motion to shorten and limit notice of this Motion (the "Motion to Shorten").  By the Motion to Shorten, the Committee seeks to serve a copy of this Motion upon the following parties: (i) the Debtors, (ii) Counsel to the Debtors; (iii) Office of the U.S. Trustee; and (iv) all other parties having filed with the Court a request for notice.  Notice of the hearing on the Motion will be served in accordance with Rule 2002(a)(4) once the Court sets a hearing date.  The Committee respectfully submits that in light of the nature of the relief requested and the economics of this case, no further notice of the relief requested is necessary or required.

49.     No previous motion for the relief sought herein has been made to this or any other court.

## CONCLUSION

For the reasons set forth more fully above, the Committee respectfully requests that the Court convert the Debtors' cases to one under Chapter 7 of the Bankruptcy Code and award the

Committee other relief that is just and appropriate.

Dated: July 22, 2020                             **MORRIS JAMES LLP**

*/s/ Eric J. Monzo*
Jeffrey R. Waxman (DE Bar No. 4159)
Eric J. Monzo (DE Bar No. 5214)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email: jwaxman@morrisjames.com
Email: emonzo@morrisjames.com
Email: bkeilson@morrisjames.com

*Counsel to the Official Committee of*
*Unsecured Creditors*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| OLD LC, INC., *et al.*,[1] | Case No. 19-11791 (BLS) |
| Debtors. | (Jointly Administered) |
| | **RE D.I.** |

## ORDER GRANTING EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER, PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE, CONVERTING THE DEBTORS' CASES TO CASES UNDER CHAPTER 7

Upon consideration of the *Emergency Motion of the Official Committee of Unsecured Creditors for an Order, Pursuant to Section 1112(b) of the Bankruptcy Code, Converting the Debtors' Cases to Cases Under Chapter 7* (the "Motion to Convert") [D.I. ____], filed by the Committee,[2] seeking entry of an order converting the Debtors cases to cases under Chapter 7 of the Bankruptcy Code; and it appearing that this Court has jurisdiction to consider the Motion to Convert and all responses pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and it appearing that this is a core matter pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that venue of these Chapter 11 Cases and of the Motion to Convert is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and that no other or further notice need be given; and the Court having determined that granting the relief requested in the Motion to Convert

---

[1]  The Debtors are the following four entities (the last four digits of their respective taxpayer identification number, if any, follow in parentheses): Old LC, Inc. (7119), Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc.  The Debtors' noticing address in these Chapter 11 cases is 3401 Pasadena Avenue, Los Angeles, CA 90031.

[2]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion to Convert.

is in the best interest of the Debtors, the Debtors' creditors, and other parties in interest; and it appearing that due and adequate notice of the Motion to Convert has been given; and no other or further notice of such Motion to Convert is necessary or required; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED, that:

1.      The Motion to Convert is GRANTED.

2.      Effective as of the date of the entry of this Order, the above-captioned chapter 11 cases (collectively, these "Chapter 11 Cases") shall be converted to cases under chapter 7 of the Bankruptcy Code.

3.      Each professional retained by the above-captioned debtors and debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (such professionals, collectively, the "Professionals") shall file final statements and applications for compensation (collectively, the "Fee Applications") within sixty (60) days of entry of this order, or be forever barred from receiving any such compensation. Objections, if any, to a Fee Application must be filed and served on counsel to the Chapter 7 Trustee once appointed, and the party filing such Fee Application, so as to be actually received within twenty (20) days after the filing of the Fee Applications.

4.      The Debtors shall:

(a)      within seven (7) days of entry of this Order, turn over to the chapter 7 trustee all records and property of the estates under their custody and control as required by Rule 1019(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules");

(b)      within fifteen (15) days of entry of this Order, as required by Bankruptcy Rule 1019(5), file a schedule of unpaid debts incurred after the Petition Date and before the conversion date, which schedule shall include the name and address of each creditor holding any such debt; and

(c)      within thirty (30) days of entry of this Order, as required by Bankruptcy Rule 1019(5), file and transmit a final report and account to the Office of the United States Trustee.

5.      A representative of the Debtors and, if requested by the Chapter 7 Trustee, counsel to the Debtors in these Chapter 11 Cases, shall appear at the first meeting of creditors after conversion of the Debtor's case to chapter 7 pursuant to sections 341(a) and 343 of the Bankruptcy Code, and such representative shall be available to testify at such meeting.

6.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| OLD LC, INC., *et al.*, | Case No. 19-11791 (BLS) |
| | (Jointly Administered) |
| Debtors. | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of July, 2020, I caused to be filed with the Court

electronically, and I caused to be served a true and correct copy of the:

**EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS FOR AN ORDER, PURSUANT TO**
**SECTION 1112(b) OF THE BANKRUPTCY CODE, CONVERTING**
**THE DEBTORS' CASES TO CASES UNDER CHAPTER 7**

upon the parties that are registered to receive notice via the Court's CM/ECF notification

system, and additional service was completed via U.S. Mail on the parties listed below.


    */s/ Eric J. Monzo*
Eric J. Monzo (DE Bar No. 5214)

| Creditor Name | Address 1 | Address 2 | Address 3 | Address 4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| BAYARD P.A | ATTN: ERIN R. FAY | 600 N. KING STREET | | | WILMINGTON | DE | 19806 | |
| BENSUSSEN DEUTSCH & ASSOCIATES | PO BOX 31001-2214 | | | | PASADENA | CA | 91110-2214 | |
| BIO WORLD MERCHANDISING INC. | 1159 COTTONWOOD LN | | | | IRVING | TX | 75038-6107 | |
| BIO WORLD MERCHANDISING, INC | C/O SCHEEF & STONE, L.L.P. | ATTN : PETER C. LEWIS AND CHRISTIAN COWART | 500 NORTH AKARD | STE. 2700 | DALLAS | TX | 75201 | |
| BIO WORLD MERCHANDISING, INC | C/O ASHBY & GEDDES, P.A. | ATTN: RICARDO PALACIO | 500 DELAWARE AVE, 8TH FLOOR | PO BOX 1150 | WILMINGTON | DE | 19899-1150 | |
| BREAKWATER CREDIT OPPORTUNITIES FUND, LP, SAIF MANSOUR, AAMIR AMADANI, DARRICK GEANT, ERIC BECKMAN & JOE KACZOROWSKI | C/O MORGAN LEWIS & BOCKIUS LLP | ATTN: JOHN V. GORMON, JODY C. BARILLARE & KELSEY A. BOMAR | NEMOURS BUILDING | 1007 NORTH ORANGE ST, SUITE 501 | WILMINGTON | DE | 19801 | |
| BREAKWATER CREDIT OPPORTUNITIES FUND, LP, SAIF MANSOUR, AAMIR AMADANI, DARRICK GEANT, ERIC BECKMAN & JOE KACZOROWSKI | C/O MORGAN LEWIS & BOCKIUS LLP | ATTN: CRAIG A. WOLFE & JASON R. ALDERSON | 101 PARK AVENUE | | NEW YORK | NY | 10178 | |
| BRIAN LAIBOW | 573 CHAPALA DRIVE | | | | PACIFIC PALISADES | CA | 90272 | |
| BUNGIE, INC. | C/O MILLER NASH GRAHAM & DUNN LLP | ATTN: JOHN R. KNAPP, JR. | PIER 70, 2801 ALASKAN WAY | SUITE 300 | SEATTLE | WA | 98121 | |
| CLEAR FINANCE TECHNOLOGY CORPORATION | ATTN: ANDREW D'SOUZA | 548 MARKET STREET | SUITE 68100 | | SAN FRANCISCO | CA | 94104 | |
| DANA NESSEL, ATTORNEY GENERAL & KATHERINE C. KERWIN, ASSISTANT ATTORNEY GENERAL | ATTORNEYS FOR THE STATE OF MICHIGAN, DEPARTMENT OF TREASURY | CADILLAC PLACE | STE 10-200 | 3030 W. GRAND BLVD | DETROIT | MI | 48202 | |
| DELAWARE STATE TREASURY | 820 SILVER LAKE BOULEVARD | SUITE 100 | | | DOVER | DE | 19904 | |
| DESING INTERNATIONAL GROUP, INC. | C/O DCN HOLDINGS, INC. | 1806 33RD STREET | SUITE 180 | | ORLANDO | FL | 32839 | |
| FACEBOOK | ATTN: ACCOUNTS RECEIVABLE | 15161 COLLECTIONS CENTER DRIVE | | | CHICAGO | IL | 60693 | |
| FEDEX | C/O FEDEX CORPORATE SERVICES INC. | 3965 AIRWAYS BLVD., MODULE G | 3RD FLOOR | | MEMPHIS | TN | 38116-5017 | |
| FUNKO, LLC | C/O MONZACK MERSKY MCLAUGHLIN AND BROWDER, P.A. | ATTN: RACHEL B. MERSKY | 1201 N. ORANGE ST. | STE. 400 | WILMINGTON | DE | 19801 | |
| GEOFFREY ARENS | C/O DENDERA ADVISORY | 747 THIRD AVENUE | 26TH FLOOR | | NEW YORK | NY | 10017 | |
| GLOBAL ONE ACCESSORIES LLC | ATTN: BRANDON MICHAELS | 7 SHAKER HOLLOW ROAD | | | EAST SETAUKET | NY | 11733 | |
| GOLD WING TOYS PRODUCTS LIMITED | ATTN: CHING LAU | 232 DES VOEUX ROAD | | | CENTRAL HONG KONG | | | HONG KONG |
| INTERNAL REVENUE SERVICE | PO BOX 7346 | | | | PHILADELPHIA | PA | 19101 | |
| JACK NADEL INC. | 8701 BELLANCA AVENUE | | | | LOS ANGELES | CA | 90045 | |
| JPL ASSOCIATES, INC. | DBA PROMOTIONAL CONCEPTS TEAM | 1250 HALLANDALE BCH BLVD | SUITE 404 | | HALLANDALE BCH | FL | 33009 | |
| JUST FUNKY, LLC | 4160 HIGHLANDER PARKWAY | | | | RICHFIELD | OH | 44286 | |
| JUST FUNKY, LLC | C/O GELLERT SCALI BUSENKELL & BROWN, LLC | ATTN: RONALD S. GELLERT & AMY D. BROWN | 1201 N. ORANGE ST. | STE. 300 | WILMINGTON | DE | 19801 | |
| K&S SPECIALTY PRODUCTS | 25526 HARDY PL | | | | STEVENSON RANCH | CA | 91381 | |
| LANDSBERG ORORA | ATTN: PETE AUDE | 1900 WEST UNIVERSITY DRIVE | SUITE 101 | | TEMPE | AZ | 85281 | |
| MAJOR LEAGUE BASEBALL PROPERTIES, INC. OF THE COMMISSIONER OF BASEBALL | C/O CHIPMAN BROWN CICERO & COLE, LLP | ATTN: WILLIAM E. CHIPMAN AND MARK D. OLIVERE | HERCULES PLAZA | 1313 NORTH MARKET ST. STE. 5400 | WILMINGTON | DE | 19801 | |
| MARVEL BRANDS | 500 SOUTH BUENA VISTA STREET | | | | BURBANK | CA | 91521-9600 | |
| MCKINSEY & COMPANY INC. UNITED STATES | PO BOX 7247-7255 | | | | PHILADELPHIA | PA | 19170-7255 | |
| MLB ADVANCED MEDIA, LP | 75 NINTH AVENUE | | | | NEW YORK | NY | 10011 | |
| MONEY CHEST | C/O COOLEY LLP | ATTN: ROBERT L. EISENBACH, III | 101 CALIFORNIA STREET, 5TH FLOOR | | SAN FRANCISCO | CA | 94111 | |
| MONEY CHEST | C/O BAYARD, P.A. | ATTN: ERIN R. FAY AND DANIEL N. BROGAN | 600 N. KING STREET, SUITE 400 | | WILMINGTON | DE | 19801 | |
| MONEY CHEST | C/O COOLEY LLP | ATTN: CATHY HERSHCOPF, ROBERT WINNING, AND SARAH A. CARNES | 55 HUDSON YARDS | | NEW YORK | NY | 10001-2157 | |
| MONEY CHEST LLC | 8635 WEST SAHARA AVENUE | SUITE 664 | | | LAS VEGAS | NV | 89117 | |

Old LC, Inc. (f/k/a Loot Crate, Inc.), et al.  (19-11791)

Page 1 of 2

| Name | Attn | Address 1 | Address 2 | Address 3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| OFFICE OF THE UNITED STATES TRUSTEE | ATTN: BEN HACKMAN | 844 KING STREET | SUITE 2207 | | WILMINGTON | DE | 19801 | |
| OFFICE OF UNEMPLOYMENT COMPENSATION TAX SERVICES | ATTN: DEB SECREST | COLLECTIONS SUPPORT UNIT | 651 BOAS ST, ROOM 925 | | HARRISBURG | PA | 17121 | |
| ORACLE AMERICA, INC | C/O BUCHALTER | ATTN: SHAWN M. CHRISTIANSON | 55 SECOND STREET | 17TH FL | SAN FRANCISCO | CA | 94105-3493 | |
| PACIFIC CAPITAL MANAGEMENT, LLC | ATTN: JONATHAN GLASER | 11601 WILSHIRE BLVD. | SUITE 2180 | | LOS ANGELES | CA | 90025 | |
| PROTIVITI, INC. | 12269 COLLECTIONS CENTER DRIVE | | | | CHICAGO | IL | 60693 | |
| RR DONNELLEY RECEIVABLES, INC. | PO BOX 932721 | | | | CLEVELAND | OH | 44193 | |
| SECRETARY OF STATE | ATTN: DIVISION OF CORPORATIONS | FRANCHISE TAX | PO BOX 898 | | DOVER | DE | 19903 | |
| SECURITIES & EXCHANGE COMMISSION | SECRETARY OF THE TREASURY | 100 F STREET, NE | | | WASHINGTON | DC | 20549 | |
| SECURITIES & EXCHANGE COMMISSION – NY OFFICE | ATTN: ANDREW CALAMARI, REGIONAL DIRECTOR | 200 VESEY STREET | SUITE 400 | | NEW YORK | NY | 10581-1022 | |
| SHANNON HSU | C/O DEHSU LLC | 219 GRAND STREET | APT #303 | | NEW YORK | NY | 10013 | |
| SIDEBENCH STUDIO, LLC | 330 S BARRINGTON AVE | APT 210 | | | LOS ANGELES | CA | 90049-6419 | |
| SIX STAR (HK) LTD. DBA LUCKY GROUP | ATTN: JENNIFER CAREY | 94 GRANVILLE RAOD | TSIM SHA TSUI EAST, SUITE 508 | INTERNATIONAL PLAZA | KOWLOON | | | HONG KONG |
| SOMETHING INKED /AIA CORPORATION | 222 W COLLEGE AVE FL 9 | | | | APPLETON | WI | 54911-5863 | |
| STATE OF WASHINGTON, DEPARTMENTS OF REVENUE | ATTN: DINA L. YUNKER, ASSISTANT ATTORNEY GENERAL | 800 FIFTH AVENUE | SUITE 2000 | | SEATTLE | WA | 98104-3188 | |
| TEXAS COMPTROLLER OF PUBLIC ACCOUNTS | C/O ATTORNEY GENERAL'S OFFICE | ATTN: CHRISTOPHER S. MURPHY | BANKRUPTCY & COLLECTIONS DIVISION | PO BOX 12548 | AUSTIN | TX | 78711-2548 | |
| TREND SETTERS, LTD. | 22500 STATE ROUTE 9 | | | | TREMONT | IL | 61568 | |
| TWENTIETH CENTURY FOX LICENSING AND MERCHANDISING AND MARVEL BRANDS LLC | C/O WILMER CUTLER PICKERING HALE AND DORR LLP | ATTN: A. GOLDMAN AND N. MANZER | 7 WORLD TRADE CENTER | 250 GREENWICH STREET | NEW YORK | NY | 10007 | |
| TWENTIETH CENTURY FOX LICENSING AND MERCHANDISING AND MARVEL BRANDS LLC | C/O POTTER ANDERSON & CORROON LLP | ATTN: J. RYAN, R. MCEIL, D. SLAUGH | 1313 NORTH MARKET STREET, 6TH FL. | PO BOX 951 | WILMINGTON | DE | 19899 | |
| US ATTORNEY'S OFFICE | HERCULES BUILDING | 1313 NORTH MARKET STREET | | | WILMINGTON | DE | 19801 | |
| VANTIV, LLC | ATTN: CHRIS KEMPER | 8500 GOVERNORS HILL DRIVE | | | SYMMES TOWNSHIP | OH | 45249-1384 | |
| WELLS FARGO | 301 SOUTH COLLEGE STREET | 5TH FLOOR | MAIL CODE D1053-05G | | CHARLOTTE | NC | 28202 | |
| WORLDPAY, LLC F/K/A VANTIV, LLC | C/O BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP | ATTN: JENNIFER R. HOOVER, KEVIN M. CAPUZZI, AND MATTHEW D. BEEBE | 222 DELAWARE AVENUE | SUITE 801 | WILMINGTON | DE | 19801 | |
| ZAK DESIGNS, INC. | PO BOX 19188 | | | | SPOKANE | WA | 99219-9188 | |
| COUNSEL TO THE DEBTORS | BRYAN CAVE LEIGHTON PAISNER | ANDREW J. SCHOULDER, MARK I. DUEDALL, & LEAH FIORENZA MCNEILL | 1201 W. PEACHTREE STREET, NW, 14TH FLOOR | | ATLANTA | GA | 30309-3471 | |
| COUNSEL TO THE DEBTORS | ROBINSON & COLE LLC | NATALIE D. RAMSEY, MARK A. FINK, JAMIE L. EDMONSON | 1201 NORTH MARKET STREET SUITE 1406 | | WILMINGTON | DE | 19801 | |