IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 Case |
| | § | |
| Old LC, Inc., *et al.*[1] | § | Case No. 19-11791 (BLS) |
| | § | |
| Debtors. | § | Jointly Administered |

| | | |
|---|---|---|
| Official Committee of Unsecured Creditors of Old LC, Inc., et al., for and on behalf of the estates of Old LC, Inc., *et al.*; | § § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Adv. No. 20-51002 (BLS) |
| Upfront V, LP, Breakwater Credit Opportunities Fund, L.P.; Upfront GP V, LLC; Mark Suster; Dana Kibler; Gregory Bettinelli; Saif Mansour; Aamir Amdani; Eric Beckman; Darrick Geant; and Joseph Kaczorowski | § § § § § § § § | |
| *Defendants.* | § | |

**JOINT MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER (I) PURSUANT
TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND
11 U.S.C. § 105(A) APPROVING A SETTLEMENT, AND (II) AUTHORIZING
PAYMENT OF LEGAL FEES AND EXPENSES OF CONTINGENCY COUNSEL AND
<u>US TRUSTEE FEES</u>**

The above-captioned debtors and debtors in possession (the "<u>Debtors</u>") and the Official

Committee of Unsecured Creditors (the "<u>Committee</u>," and together with the Debtors, the

---

[1] The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Old LC, Inc. (7119), Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc.  The Debtors' noticing address in these Chapter 11 cases is c/o Bryan Cave Leighton Paisner LLP, Attn: Mark I. Duedall, 1201 W. Peachtree Street, 14th Floor, Atlanta, Georgia 30309.

1

"Movants"), hereby seek entry of an order (i) pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 105(a) approving a settlement of the above-captioned adversary proceeding (the "Adversary Proceeding"), and (ii) authorizing payment of legal fees and expenses of contingency counsel, and US Trustee Fees, and in support of its request, the Movants represent as follows:

## INTRODUCTION

The proposed settlement of the Adversary Proceeding is a crucial step toward the conclusion of the Debtors' bankruptcy cases, achieved only after the completion of fact discovery, motion practice during the early stages of this case, and more than a full day of mediation with a former member of Delaware's Chancery Court. By and through the proposed settlement, the Defendants will pay $6.8 million (the "Settlement Payment") in exchange for which the parties to the settlement agreement will exchange mutual releases. While the proposed settlement will not resolve all of the issues in the underlying bankruptcy cases, the Debtors and the Committee each believe that the proposed settlement significantly exceeds the standards required for the approval of a settlement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, under the TMT and Martin standards.

Further, the Court approved the retention of special counsel for the Committee on a contingency basis pursuant to 11 U.S.C. §§ 1103 and 328. By and through the Motion, and the fee application contemporaneously filed by Contingency Counsel (as defined below), the Movants seek authority to remit payment of the contingency fee in the sum of $2,040,000.00 and expenses in the sum of $179,302.60 for a total payment to Contingency Counsel from the Settlement Payment in the sum of $2,219,302.60. The remaining portion of the Settlement Payment (the "Net

Settlement Proceeds"), less nominal amounts to pay[2] certain United States Trustee fees, will be held in an interest-bearing Escrow Account (as defined in the settlement agreement) and cannot be distributed for any purpose absent a Stipulation of the Interested Parties[3] or a further court order.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue of this proceeding and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are sections 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

---

[2] It is estimated that the aggregate amount of United States Trustee Fees presently outstanding and owing in the Debtors' bankruptcy cases is approximately $25,000.00. Although, the Interested Parties have agreed that the Net Settlement Proceeds shall be deposited into an Escrow Account with any distributions of the Net Settlement Proceeds subject to a written Stipulation of the Interested Parties and/or an Order of this Court, the Interested Parties do not agree on the manner in which title to the Escrow Account shall be held. The Assignee has requested that the Escrow Account be neutrally established in the name of both the Debtor and the Assignee given the nature of the dispute in the D&O Proceeds Adversary, while the Debtor has requested that the Escrow Account be held in the name of the Debtor only, which the Assignee does not consent to. Otherwise, the Assignee would agree to HKB continuing to hold the Net Settlement Proceeds subject to a written Stipulation of the Interested Parties and/or an Order of this Court.

[3] The Debtors, Committee, The Loot Company ("TLC" and "Purchaser," defined below) and Loot (Assignment for the Benefit of Creditors), LLC (the "Assignee," and collectively with the Debtors, Committee and TLC, the "Interested Parties") have a dispute as to the rights and interests in and to the Settlement Proceeds that will be paid pursuant to the Agreement that is the subject of this 9019 Motion. The Interested Parties have agreed to the terms of the Settlement Agreement, in full reservation of all of the Interested Parties' rights, interests, claims and defenses in and to the Net Settlement Proceeds and against one another as alleged in that certain Adversary Proceeding bearing Case No. 22-50107(BLS) filed in the Bankruptcy Court by the Debtors against TLC and the Assignee (the "D&O Proceeds Adversary"). Accordingly, the Interested Parties have agreed that the Net Settlement Proceeds shall be deposited into an Escrow Account (as provided in FN 2 above) with any distributions of the Net Settlement Proceeds subject to a written Stipulation of the Interested Parties and/or an Order of this Court.

**BACKGROUND**

3. On August 11, 2019 and on August 12, 2019, for Old LC Parent, Inc. (the "Petition Date"), the Debtors filed voluntary petitions with this Court under chapter 11 of title 11 of the Bankruptcy Code. The Debtors' chapter 11 cases (collectively, the "Cases") are consolidated for procedural purposes only and administered jointly.

4. The Debtors are authorized to continue to operate and manage their businesses and assets as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5. As of the Petition Date, the Debtors operated a subscription box service catering to fandom and enthusiasts through "crates" curated with "geek and gamer products" each month.

6. On August 22, 2019, the Committee of unsecured creditors was appointed in these Cases. No request has been made for the appointment of an examiner or trustee.

7. On or about September 6, 2019 (as amended on September 27, 2019, in light of the Court's subsequent approval), pursuant to an asset purchase agreement (the "Asset Purchase Agreement"), the Debtors entered into an agreement to sell substantially all of their assets, except for certain arrangements with respect to the D&O Claim Rights (as defined in the Asset Purchase Agreement), to Loot Crate Acquisition LLC, now known as The Loot Company, LLC (the "Purchaser").

8. On October 1, 2019, the Debtors closed on the sale governed by the Asset Purchase Agreement pursuant to the Court's order approving the sale.

9. On or about October 12, 2020, the Debtors, the Committee, and the Purchaser entered into a binding term sheet (the "Term Sheet Agreement") by and through which, among other things, the parties agreed that the Committee would have derivative standing to bring the D&O Claims. Additionally, the Purchaser agreed to pay certain expenses in connection with the

4

pursuit of the D&O Claims (the "D&O Expenses") and certain expenses of the estates up to $75,000 (the "Estate Expenses"). The proceeds of the D&O Claims were to be paid pursuant to a waterfall from the proceeds of the D&O Claims, subject to a to-be-prepared plan consistent with the Term Sheet Agreement. On October 21, 2020, the Court approved the Term Sheet Agreement [Docket No. 714]. However, to date, no plan of reorganization has been filed by Debtors.

10. On October 12, 2020, the Committee filed its Motion to (I) Grant Standing and for Authority for the Creditors Committee to Prosecute Certain Claims, and (II) Approve a Term Sheet Among the Debtors, the Committee, and the Purchaser (the "Term Sheet Motion") [D.I. 695]. On October 21, 2020, the Court signed an Order granting, *inter alia*, the Term Sheet Motion granting the Committee nonexclusive standing and authority to prosecute the D&O Claims, and approving the Term Sheet Agreement entered into between the parties [D.I. 714].

### Retention of Contingency Counsel

11. On November 30, 2020, the Committee filed its Application to Authorize the Retention of Stricklin Law Firm, P.C. and Hedrick Kring, PLLC (now known as Hedrick Kring Bailey PLLC) ("HKB," and together with Stricklin Law Firm, P.C., "Contingency Counsel") as Special Litigation Counsel to the Committee Nunc Pro Tunc to October 29, 2020 (the "Retention Application") [D.I. 754]. By the terms of their proposed retention, as set forth in the Retention Application, Contingency Counsel would receive 30% of all proceeds from the D&O Claims. Because the Purchaser had agreed to pay the litigation expenses in connection with the prosecution of the D&O Claims (the "Litigation Expenses"), Contingency Counsel was not responsible for payment of those or any other expenses. After addressing certain informal objections through a Certification of Counsel [D.I. 796], the Court granted the Retention Motion on February 8, 2021, *nunc pro tunc* to October 29, 2020 [D.I. 797]. Pursuant to this Order, the Court approved the

employment of Contingency Counsel and the engagement agreement, with modifications, that was signed by both the Committee and Purchaser. The Order was granted specifically pursuant to Section 328 of the Bankruptcy Code.

### The Adversary Proceeding

12.    On November 2, 2020, the Committee commenced the Adversary Proceeding by filing the Complaint and Objection to Claims against Upfront V, LP, Upfront GP V, LLC, Mark Suster, Dana Kibler, Gregory Bettinelli (collectively, the "Upfront Defendants"), Breakwater Credit Opportunities Fund, L.P., Saif Mansour,[4] Aamir Amdani, Eric Beckman, Darrick Geant, and Joseph Kaczorowski (collectively, the "Breakwater Defendants," and collectively with the Upfront Defendants, the "Defendants").

13.    On February 28, 2021, the Committee filed its First Amended Complaint [Adv. D.I. 28], and the Upfront Defendants filed their Motion to Dismiss First Amended Complaint and Motion to Strike Prayer for Compensatory Damages [Adv. D.I. 35] on March 5, 2021. The Committee filed its Opposition to the Motion to Dismiss on April 5, 2021 [Adv. D.I. 38], and the Upfront Defendants filed their Reply on April 26, 2021 [Adv. D.I. 41].

14.    Meanwhile, on June 17, 2021, the Breakwater Defendants filed their Motion for Partial Summary Judgment [D.I. 46] seeking an early summary judgment on certain of the Committee's key claims. After the Committee noticed the depositions of relevant individuals shortly after the Breakwater Defendants' Motion for Partial Summary Judgment to obtain the necessary discovery prior to filing any response, the Breakwater Defendants filed a Motion for

---

[4] Mr. Mansour passed away during the pendency of the litigation and Erika Mansour, solely in her capacity as executor of Mr. Mansour's estate, was substituted in his place as a defendant [Adv. D.I. 141].

Protective Order [D.I. 58] seeking to preclude the depositions. In response, the Committee proceeded to file a Motion to Deny or Continue Breakwater's Motion for Partial Summary Judgment to Permit Necessary Discovery and Motion to Compel Depositions [D.I. 60] pursuant to Federal Rule of Civil Procedure 56(d) (as made applicable by Federal Rule of Bankruptcy Procedure 7056). After full briefing on the competing motions, the Court held a hearing on July 22, 2021 and, thereafter, denied the Breakwater Defendants' Motion for Protective Order, deferred ruling on the Breakwater Defendants' Motion for Partial Summary Judgment, and authorized the Committee to proceed with the depositions in advance of any such ruling [D.I. 74, 76].

15.     On August 19, 2021, the Court held a hearing on the Upfront Defendants' Motion to Dismiss and Motion to Strike Prayer for Compensatory Damages [D.I. 95]. After significant preparation and arguments from both sides on the dispositive motion, the Court denied the Motion to Dismiss on September 7, 2021 in its entirety [D.I. 102].

16.     Before, during, and after this briefing and the related hearings, the parties (along with certain of the Debtors' representatives pursuant to subpoenas) exchanged hundreds of thousands of pages of documents, took almost 20 depositions, and served multiple subpoenas on other third parties for discovery. Based on the Committee's records, the Debtors, the Committee, the Upfront Defendants, and the Breakwater Defendants each produced between 70,000 and 100,000 pages of documents. The Committee served document subpoenas on non-parties like Bioworld, Atalaya, and Morgan Lewis. The Defendants issued subpoenas for the non-party depositions of Ynon Kreiz, Eric Chan, and Robert Leff (and the Committee issued cross-subpoenas for depositions and documents on each non-party). As to party-related depositions, the Committee deposed (i) Aamir Amdani, (ii) Eric Beckman, (iii) Greg Bettinelli, (iv) Michael Carney (twice), (v) Derrick Geant, (vi) Joseph Kaczorowski, (vii) Dana Kibler, and (viii) Mark Suster. As to party-

related depositions, the Defendants deposed the following representatives of the Debtors: (i) Christopher Davis, (ii) Stuart Kaufman, (iii) Osman Khan, (iv) Mark Palmer, and (v) Alex Zyngier. In total, the Committee believes the parties took approximately 75 hours of depositions.

17. Knowing the nature and extent of the claims and defenses at issue, and with the Purchaser's acknowledgement and agreement, the Committee also proceeded to search for, retain, and engage a liability and damages expert to conduct related analysis. This expert was engaged in October 2021 and worked extensively until the case resolved at mediation.

18. Pursuant to the Term Sheet, the Purchaser had agreed to pay the Litigation Expenses. The Purchaser paid $26,262.45 to cover a portion of the Litigation Expenses, but Contingency Counsel bore the burden of payment of the balance of the Litigation Expenses.[5] HKB, one of the two firms constituting Contingency Counsel, began paying from its own coffers various out-of-pocket expenses as they became due in order to keep the litigation going. To date, HKB has expended $132,275.90 in out-of-pocket expenses that have not been reimbursed. To date, HKB has not requested or sought interest on the substantial expenses it has covered, nor has HKB requested an enhancement or a modification to its contingent fee percentage for the increased out-of-pocket expense risk for which it had not bargained. In addition to the out-of-pocket expenses advanced by HKB, there is still $47,026.70 in expenses incurred in the Adversary

---

[5] While not the subject of this Motion, the Movants note that the Purchaser also agreed to directly reimburse a certain portion of the fees incurred by the Debtors' counsel in connection with their initial investigation of the D&O Claims pursuant to Rule 2004, but to date, the Purchaser has not paid such fees. The Debtors and Debtors' counsel wish to note this to avoid any potential waiver argument. The Assignee has reserved all rights related to this issue. The Assignee has also noted that as of the date of the Settlement Agreement, it lacks sufficient information on the nature of the agreement or whether the amount incurred is reimbursable from the Net Settlement Proceeds and has reserved all rights, claims and objections thereto.

Proceeding that remain due and outstanding and which will be paid by HKB when funds are available. Accordingly, the amount of $179,302.60 should be remitted to HKB to cover the litigation expenses that have been paid and those that have been incurred and will be paid.

### Disputes with Purchaser and Assignee

19. On or about January 3, 2022, the Purchaser initiated an assignment for the benefit of creditors, thereby appointing Loot (Assignment for the Benefit of Creditors), LLC as the assignee (the "Assignee").

20. On February 2, 2022, the Debtors commenced the D&O Proceeds Adversary against the Purchaser relating to, among other things, unpaid sales tax liabilities and the parties' respective obligations under the Asset Purchase Agreement. The Assignee was subsequently joined as a defendant, and thereafter the Assignee filed a Motion to Dismiss the operative pleadings alleged against the Assignee.

21. On May 26, 2022, the Debtors and Committee filed a motion for approval of litigation financing. [Docket No. 833] (the "Litigation Financing Motion"). Such financing was intended to permit the Committee to finance and prosecute the litigation through its conclusion, including appeals, if necessary, and to remit payment of the D&O Expenses that had been incurred and paid by Contingency Counsel. The Office of the United States Trustee, the Assignee, and the Purchaser each filed objections to the Litigation Financing Motion [Docket Nos. 836, 837, and 840]. As a result of the objections to the Litigation Financing Motion, the Debtors and the Committee continued the Litigation Financing Motion until after mediation with the Defendants had concluded. In light of the settlement of the Adversary Proceeding, the Movants propose that the Litigation Financing Motion be deemed withdrawn upon the entry of a final order granting this Motion.

**Mediation and Settlement**

22. The Committee and the Defendants mediated with (former) Chancellor of the Delaware Chancery Court Andre Bouchard on June 17, 2022, via Zoom. The mediation was attended by Chancellor Bouchard; the Committee, including two members, and Contingency Counsel; the Assignee and its counsel; representatives of the Defendants and their counsel; and representatives of several insurers providing coverage for the claims asserted in the Adversary Proceeding and their counsel.[6] The mediation lasted more than eight hours without a resolution, but the parties and Chancellor Bouchard agreed to continue the negotiations. Over the following week, the mediation parties conferred with each other and conferred with Chancellor Bouchard concerning settlement. On or about June 25, 2022, Chancellor Bouchard informed the parties that the parties had agreed to his mediator's proposal for payment in the amount of $6.8 million in full and final resolution of the claims asserted in the Adversary Proceeding, subject to Bankruptcy Court approval (the "Proposed Settlement"). Attached hereto as Exhibit A is a copy of the parties' Settlement Agreement, memorializing the Proposed Settlement.

**SUMMARY OF THE SETTLEMENT AGREEMENT**

23. The following summarizes the terms of the Settlement Agreement:[7]

| Payment | The Settlement Agreement provides for the payment of $6.8 million within 30 days of the date on which the Bankruptcy Court enters its Order granting this motion as further detailed in the Settlement Agreement. |
|---|---|
| Releases | The Settlement Agreement contains mutual releases through which the "Plaintiff Releasing Parties" release the "Defendant Released |

---

[6] The Debtors and their counsel were also kept informed of progress throughout the mediation and subsequent negotiations.

[7] The complete terms of the Settlement Agreement are set forth therein, and to the extent of any discrepancy between the Settlement Agreement and the summary, the terms as set forth in the Settlement Agreement shall prevail.

| | |
|---|---|
| | Parties" and the "Defendant Releasing Parties" release the "Plaintiff Released Parties" as those terms are defined in the Settlement Agreement. |
| **Dismissal** | The parties have agreed to file dismissal papers within five (5) business days after Settlement Finality (as defined in the Settlement Agreement). |
| **Other** | The Settlement Agreement contains routine provisions concerning, *inter alia*, governing law (Delaware), authority, successors and assigns, no admissions, severability, and disclaimers of reliance. |

## RELIEF REQUESTED

24. By this Motion, the Movants seek (i) approval of the Settlement Agreement pursuant to Section 105 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure, and (ii) authority to pay the legal fees of $2,040,000 and $179,302.60 of actual and necessary expenses of Contingency Counsel from the Settlement Payment, with deposit of the Net Settlement Proceeds in an Escrow Account pending either a Stipulation by the Interested Parties filed in the D&O Proceeds Adversary and/or entry of an Order by this Court.

## BASIS FOR THE RELIEF REQUESTED

### A. The Proposed Settlement Exceeds the Standards Required under <u>TMT</u> and <u>Martin</u>, and Should be Approved

25. This Court has the authority to grant the relief requested in this Motion pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provision of this title."

26. Bankruptcy Rule 9019 grants the Court authority to approve settlements of claims and controversies after notice and a hearing.[8] Under this authority, the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" Myers v. Martin (In re Martin), 91 F. 3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)). In addition, courts in this district have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997).

27. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." In re Marvel Enter. Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting Louise's, 211 B.R. at 801). To reach such a determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. Martin, 91 F.3d at 393. In striking this balance, the court should consider the following factors:

(a) The probability of success in the litigation;

(b) The complexity, expense and likely duration of the litigation;

(c) The possibilities of collecting on any judgment which might be obtained;

(d) All other factors relevant to making a full and fair assessment of the wisdom of the proposed compromise; and

(e) Whether the proposed compromise is fair and equitable to the Debtor, his creditors, and other parties in interest.

---

[8] Bankruptcy Rule 9019 provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-425 (1968). See also Martin, 91 F.3d at 393. Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 425. The TMT rule does not require the Court to hold a full evidentiary hearing before a compromise can be approved, rather, the Court's obligation is "to canvass the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'" 10 Collier on Bankruptcy, ¶ 9019.2, 9019-4 (15th ed.) (quoting In re Drexel Lambert Group, Inc., 134 B.R. 493 (Bankr. S.D.N.Y. 1991)). See also Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 822 (1983).

28. When considering the merits of the Settlement Agreement, the Debtors and the Committee focused on (i) the amount to potentially be received by the estates under the Proposed Settlement (recognizing that the Assignee asserts a competing claim to the Net Settlement Proceeds), (ii) the likelihood of success in the Adversary Proceeding, (iii) the estates' need for additional financing necessary to litigate the Adversary Proceeding, including likely appeals (and the cost of such financing), (iv) collectability on account of a verdict and judgment, and (v) the need to move forward in the Debtors' bankruptcy cases.

29. First, and foremost, the Proposed Settlement may result in a significant amount of money for the Debtors' estates subject to the disputes between the parties to the D&O Proceeds Adversary.[9] Admittedly, the Proposed Settlement is not as large an amount as the Debtors or the

---

[9] The Debtors and Committee are aware that the Purchaser and the Assignee have each asserted an entitlement to the Net Settlement Proceeds. As more fully set forth below, aside from the costs of payment of Contingency Counsel's fees and expenses and certain United States Trustee Fees, all Net Settlement Proceeds will be held in an Escrow Account and cannot be released absent a

Committee had wanted originally, but settlements seldom are. Depending upon the outcome of the D&O Proceeds Adversary, the Debtors will determine the best and most practical use of the available Net Settlement Proceeds in the Debtors' estates.

30. The Debtors and the Committee also heavily weighed the likelihood of success in this Adversary Proceeding in considering the Proposed Settlement. The Committee was able to withstand Breakwater's Motion for Partial Summary Judgment and the Upfront Defendants' Motion to Dismiss, however there is a significant difference between succeeding in defending against dispositive motions and success at trial. Further, the Committee recognizes that the Adversary Proceeding raises factual questions that preclude the Court from granting summary judgment to the plaintiff. As such, a trial will be necessary, the outcome of which is uncertain and difficult to predict.

31. Delaware law emphasizes that fact-intensive nature of the analysis that would determine the outcome of the Adversary Proceeding, if tried. In re Cysive, Inc. S'holders Litig., 836 A.2d 531, 550-51 (Del. Ch. 2003) ("Because the question of whether a large block holder is so powerful as to have obtained the status of a 'controlling stockholder' is intensely factual, it is a difficult one to resolve on the pleadings.") Voigt v. Metcalf, 2020 WL 614999, at *12 (Del. Ch. Feb. 10, 2020) ("There is no magic formula to find control; rather, it is a highly fact specific inquiry."). Courts consider the following factors to determine whether a shareholder is a controlling shareholder: (i) relationships with particular directors; (ii) relationships with key managers and advisors; (iii) exercise of contractual rights to channel corporation to outcome; (iv) existence of commercial relationships providing defendant with leverage over corporation (v)

---

stipulation of the Interested Parties in the D&O Proceeds Adversary and/or a further order of the Court.

ownership of a significant equity stake; (vi) the right to designate directors (vii) decisional rules in governing documents that enhance power of minority shareholder; and (viii) ability to exercise outsized influence in board room.  Id.  Proof of these issues will require an extended, complex trial that will be hotly contested.  Certain threshold issues will also raise complex issues of law, including the availability of a jury or an advisory jury. While the Committee believes in the merit of the case, there is a significant risk that the Committee would not ultimately prevail at trial.

32.     The issue of financing was certainly another issue that was considered in the context of settlement discussions.  There were serious questions about whether there would be sufficient funds available to finance litigation through trial and any appeals, as well as to pay certain ordinary course expenses necessary to continue the administration of the estates, including payment of the United States Trustee fees.[10]  Further, despite that they were not obligated, Contingency Counsel had remitted more than $100,000 of out-of-pocket expenses, however the Contingency Counsel was not willing to take any further risk by continuing to pay the D&O Expenses out of pocket by the time the case reached mediation.  While the Debtors and Committee believe that they would ultimately prevail on the Litigation Financing Motion, the objections by the Office of the United States Trustee, the Assignee and the Purchaser did raise a cloud as to whether the financing would be approved.  Had it not been approved, it would have been challenging for the Committee to find alternative sources of financing for the litigation of the D&O Claims.

33.     The Debtors and Committee believe any judgment it might take would be collectable, either via insurance or assets held by the various Defendants.  However, any collection efforts would likely require significant, expensive post-judgment appeals, post-judgment

---

[10] The Assignee contends that the funds that it offered to lend were sufficient to cover the expenses estimated by Contingency Counsel.

discovery, and post-judgment litigation that could take years. Even then, however, the Committee was made aware of the fact that certain of the Defendants' insurers have denied coverage, making collectability less than guaranteed.

34. Finally, the underlying bankruptcy cases were filed almost three years ago. During that time, administrative expenses of the estates, including United States Trustee fees, are mounting, and it is possible that the tax entities may seek to charge interest or fees on account of those claims that were to be paid by the Purchaser. In short, these cases need to move quickly toward a conclusion. While there will remain issues to be litigated in the D&O Proceeds Adversary, the Proposed Settlement resolving the D&O Claims in the Adversary Proceeding herein is a necessary first step toward a final resolution.

35. The Debtors and the Committee both believe that the Proposed Settlement provides significant benefits to the Debtors and their estates even if a plan is not possible. For the foregoing reasons, the Debtors, in their business judgment have determined that the Proposed Settlement is in the best interests of the Debtors' estates. Accordingly, the Debtors and the Committee respectfully submit that the Proposed Settlement meets the standards set forth in TMT Trailer Ferry and In re Martin.

**B.    The Debtors and Committee Should be Authorized to Remit Payment of the Contingency Fees and Expenses of Contingency Counsel.**

36. By and through the Term Sheet Agreement, the Retention Application, and this Court's February 8, 2021, Order approving the Retention Application, Contingency Counsel is entitled to a contingency fee of 30% for any affirmative recovery it obtains on behalf of the D&O Claims pursuant to 11 U.S.C. §§ 1103 and 328.

37. As more fully set forth herein, by and through the Proposed Settlement, Defendants will pay the sum of $6.8 million, thereby entitling Contingency Counsel to receive $2,040,000 on

16

account of their fees. As reflected in the fee application filed contemporaneously herewith, such fees were well earned as Contingency Counsel has expended more than 2,000 hours over the course of prosecuting the D&O Claims on behalf of the estates. Additionally, Contingency Counsel also incurred expenses of $179,302.60 for which they are entitled to repayment. The Debtors and the Committee respectfully submit that such amounts should also be paid.

38. Counsel for the Committee has conferred with counsel for the Assignee, and the Assignee does not oppose payment of Contingency Counsel's fees or reimbursement of their expenses. Counsel for the Committee has also conferred with counsel for the United States Trustee, who wishes to review Contingency Counsel's fee application before taking any position on the issue.

### C.   The Debtors should be Allowed to Pay Certain US Trustee Fees.

39. The Debtors owe approximately $25,000 in US Trustee fees; a small additional amount (approximately $10,000) may accrue based on the disbursement to Contingency Counsel if the relief sought herein is granted, and then such fees will continue to accrue (even if nothing else is spent for some time) due to the minimum amounts set forth in 28 U.S.C. § 1930. While reserving all applicable rights in the D&O Proceeds Adversary, the Assignee has consented to the payment of US Trustee Fees from the Net Settlement Proceeds in an amount not to exceed $45,000. However, consistent with their obligations under the Bankruptcy Code, the Debtors are requesting this Court's authority to seek additional releases of funds to pay US Trustee fees in excess of $45,000 if the D&O Proceeds Adversary is still pending and the Net Settlement Proceeds remain in escrow. Specifically, the Debtors propose that, in such event, the Debtors would file a certification of counsel with the accompanying invoice for the US Trustee fees, with notice thereof to, among others, the Office of the United States Trustee, counsel to the Committee, and counsel to the Assignee requesting such further distribution.

### D. The Net Settlement Proceeds Should be Held in an Interest-Bearing Escrow Account Pending Further Order of this Court.

40. The Debtors and the Committee acknowledge that, once the Proposed Settlement is approved, there will remain competing claims for the balance of the Net Settlement Proceeds from the Proposed Settlement. The Debtors and the Committee submit that, other than those amounts to be paid to Contingency Counsel and certain US Trustee Fees not to exceed $45,000, it is appropriate that all Net Settlement Proceeds from the D&O Claims be held in a blocked Escrow Account pending the Court's determination of the D&O Proceeds Adversary and/or a stipulation of the parties as to the disposition of the Net Settlement Proceeds and entry of an order thereon.

### NOTICE

41. The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee; (b) counsel for the Defendants; (c) counsel for the Assignee; (d) counsel for the Purchaser; (e) all parties that have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

### NO PRIOR RELIEF

42. No prior request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Movants respectfully request that this Court enter an Order in the form attached hereto (i) approving the Proposed Settlement and the Settlement Agreement; (ii) authorizing the Debtors and the Committee to consummate the Settlement Agreement and to take such actions as necessary to effectuate the terms and conditions as set forth therein; (iii) authorizing the payment of legal fees of $2,040,000 and expenses of up to $179,302.60 to Contingency Counsel and US Trustee Fees; (iv) directing that all further Net Settlement Proceeds from the

Settlement Agreement be held in an Escrow Account pending further order of this Court in the D&O Proceeds Adversary and/or a stipulation of the parties as to the disposition of the Net Settlement Proceeds and entry of an order thereon; and (v) granting to the Movants such other and further relief as is just and proper.

October 4, 2022

| **BRYAN CAVE LEIGHTON PAISNER LLP** | **MORRIS JAMES LLP** |
|---|---|
| /s/ Mark I. Duedall<br>Mark I. Duedall (No. 3346)<br>One Atlantic Center – Fourteenth Floor<br>1201 W. Peachtree Street, NW<br>Atlanta, Georgia 30309-3471<br>Telephone: (404) 572-6600<br>Facsimile: (404) 572-6999<br>Email: mark.duedall@bclplaw.com<br><br>*Counsel for the Debtors and Debtors in Possession* | /s/ Jeffrey R. Waxman<br>Jeffrey R. Waxman, Esquire (DE Bar No. 4159)<br>Eric J. Monzo, Esquire (DE Bar No. 5214)<br>500 Delaware Avenue; Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 888-6800<br>E-mail: jwaxman@morrisjames.com<br>E-mail: emonzo@morrisjames.com<br><br>*Counsel to the Official Committee of Unsecured Creditors* |